## FRANK J. HILLA v. ANTHON C. JENSEN AND OTHERS.[1]

May 6, 1921.

No. 22,293.

**Arrest without a warrant.**

1. Under the statutes of this state, a peace officer may arrest without a warrant, when the person arrested has, in his presence, committed or attempted to commit any public offense, either a felony or a misdemeanor; when he has committed a felony, though not in the officer's presence; when a felony has been committed and the officer has reasonable cause to believe that the person arrested committed it; upon a charge made upon reasonable cause of the commission of a felony by the person arrested; and at night when the officer has reasonable cause to believe that the person arrested has committed a felony, though no felony has in fact been committed. There is no authority for arrest without a warrant because of mere belief that a person has committed a misdemeanor.

**Unlawful arrest of residents in apartment building.**

2. Peace officers raided a building of 30 apartments, some of which, they had cause to believe, the proprietress used or permitted to be used for purpose of prostitution. There is no evidence that they were in fact so used. Plaintiff and his wife lived in one of the apartments and were arrested without a warrant. There is no claim that the officers believed that they were in any sense connected with the management of the building. There was no thought that they were committing any offense, except the misdemeanor of being inmates of a disorderly

[1] Reported in 182 N. W. 902.

house. They were not committing and had not committed that offense. *Held*, their arrest was unlawful.

Action in the district court for Hennepin county to recover $10,000 for false imprisonment. The case was tried before Fish, J., who at the close of the testimony denied defendants' motion for a directed verdict in their favor, and a jury which returned a verdict for $80, and costs and attorney's fees, against defendants Michael Johannes and J. P. Gleason. The motion of defendants Johannes and Gleason for judgment notwithstanding the verdict was granted. From the judgment entered in favor of these defendants, plaintiff appealed. Remanded for judgment on the verdict for $80.

*George S. Grimes*, for appellant.

*Brady, Robertson & Bonner*, for respondents.

HALLAM, J.

Mendenhall Court is located on Fifteenth street and Third avenue in Minneapolis. It is a three story and basement building with two separate entrances on Fifteenth street. It was all leased to one party, Mrs. Tremont. She furnished and sublet the apartments, sometimes by the week, sometimes by the month.

Plaintiff enlisted in the regular army in 1902. In 1911 he had become a sergeant and was stationed at Fort Snelling and there he married Regina Paulson, a cook in the household of a colonel stationed there. He continued in the service and his wife was with him as she could be. On August 15, 1917, plaintiff was promoted to captain. In May, 1918, he went overseas and to the Italian front, and he was seriously wounded there on September 13, 1918, and was later invalided home. On August 20, 1918, plaintiff's wife leased, by the month, apartment number 207, a furnished apartment of two rooms, kitchenette and bath, in Mendenhall Court. Plaintiff arrived there December 29, 1918. He was still in the service, part of the time in the hospital, and during the next seven months had four leaves of absence of about 30 days each which he spent with his wife at Mendenhall Court. On August 4, 1919, he was honorably discharged from the service and lived there from that time on. The building was well filled. Many of the subtenants were highly

respectable people, one was a minister of the Gospel, a number of others were families with children. There is no evidence that any part of the building was in fact used for immoral purposes.

Defendants were police officers of the "purity squad" detailed especially to the work of moral clean-up. There is evidence, not controverted, that these officers were informed that the proprietress of this building was knowingly subletting some of her apartments to prostitutes and for purposes of prostitution and dissipation. There is also evidence that early in July, 1918, defendants had received a complaint of drunken men coming out of apartment number 207, and had received a report from one who knew "Captain Hilla" and his wife, that Captain Hilla was separated from his wife, that a Mrs. Terp was her companion during his absence, and that Mrs. Hilla and Clara Olson "were continually running in and out of that flat and taking men up in there. They have been getting whiskey and they have been drunk time and again."

About 1 a. m. of September 7, 1919, defendants raided Mendenhall Court. They arrested the proprietress, went through the building, called on all the occupants, and arrested those whom they thought were there for illicit purposes. They left the minister of the Gospel and all who showed evidence of having children and others, if they "figured they looked decent." When they came to plaintiff's apartment, one of defendants "put Mr. and Mrs. Hilla's name" on a slip of paper, put the slip in his pocket and went on to the next one until he had "a whole stack of peeople," 37 in all.

Plaintiff and his wife were both arrested and sent to the city jail. The testimony is in conflict as to what took place at the apartment when they were arrested. Plaintiff and his wife testified that they told defendants that they were married and that plaintiff was a discharged soldier, and produced their marriage certificate and plaintiff's discharge from the army, but that defendants refused to look at them, but simply said: "Put on your clothes and come along." Defendants denied this, and said plaintiff refused to answer questions or to permit his wife to do so, and told them it was none of their business and that one of defendants then said: "Well, if that is the attitude you take, why dress up and we will be back in a few minutes." It is conceded that

plaintiff had both his marriage certificate and his discharge with him and that he exhibited them to the officers next day.

Some of these details have no bearing on the question of the right of the officers to make the arrest, but have a bearing on the extent of their liability, if they are liable at all. This action is for false imprisonment, not for malicious prosecution. The question is whether defendants had any right to arrest and imprison plaintiff. If not, they are liable in damages, and the circumstances are mainly important as aggravation or mitigation of damages. Defendants had no warrant for plaintiff's arrest. The circumstances under which peace officers may arrest without a warrant are defined in the statutes of the state. The material statutes are as follows:

G. S. 1913, § 9066:

"A peace officer may, without warrant, arrest a person:

1. For a public offense committed or attempted in his presence;

2. When the person arrested has committed a felony, although not in his presence;

3. When a felony has in fact been committed, and he has reasonable cause for believing the person arrested to have committed it; or

4. Upon charge made upon reasonable cause of the commission of a felony by the person arrested." * * *

G. S. 1913, § 9067:

"He may at night, without a warrant, arrest any person whom he has reasonable cause for believing to have committed a felony, and shall be justified in making such arrest, though it shall afterwards appear that no felony has been committed."

Paragraphs 1 and 2 of section 9066 are not material. There is no claim that plaintiff committed any offense, either felony or misdemeanor.

Paragraph 3 is not material, for there is no claim in this case that a felony had in fact been committed by any one. The trial court expressly ruled that there was no such proof.

Defendants rely mainly on section 9067 which embraces the substance of paragraph 4 of section 9066 and more. We are unable to see how this section can relieve defendants. We find no evidence that defendants had either belief or reasonable cause for belief that plaintiff had committed a felony. The only felony charged, or believed to have been

committed, was that of keeping a house of ill-fame in the premises known as Mendenhall Court. We may assume there was probable cause for belief that part of the building was kept as a house of ill-fame, but the belief of defendants was that Mrs. Tremont was running the house. Defendant Johannes testified very frankly that he didn't think either plaintiff or his wife was running it, never gave that a thought, that it was simply because plaintiff and his wife had an apartment in the building that they were taken, "because," he said, "we were raiding a disorderly house, a house of ill-fame, and you can take any person in there." There was no thought that plaintiff had committed a felony. There was a thought that he was an inmate of a house of ill-fame, and so was committing a misdemeanor by violating a city ordinance, but mere belief that a person has committed or is committing a misdemeanor does not justify even a peace officer in his arrest without a warrant, if in fact no misdemeanor has been committed or attempted.

It is important that moral clean-up work be vigorously prosecuted in cities and that it be not hampered by technical rules of law, but the right of plaintiff to freedom from arrest while behaving himself properly in his home was a substantial right which defendants could not violate, even though they were acting honestly and from laudable motives. The arrest was unlawful and plaintiff has a cause of action for false imprisonment.

The case will be remanded for judgment on the verdict for $80. The remainder of the verdict is not sustainable.