FORSYTHE *et al. v.* IVEY.

(Division B. Feb. 15, 1932. Suggestion of Error Overruled Mar. 14. 1932.)

[139 So. 615. No. 29821.]

Cary Stovall, and W. H. Kier, both of Corinth, for appellants.

J. W. P. Boggan, of Tupelo, for appellee.

474

**Ethridge, P. J.,** delivered the opinion of the court.

The appellee, J. S. Ivey, brought suit against the appellants, W. E. Forsythe and John Busby, policemen of the city of Corinth, for an alleged false imprisonment, and recovered judgment in the sum of five hundred dollars therefor, from which judgment this appeal is prosecuted.

It appears that Ivey was arrested about eight o'clock in the evening of June 25, 1929, by the appellants. Forsythe had been a policeman of the city of Corinth for thirteen years and Busby for about eighteen years. The arrest was made without warrant, and was made on the belief that the appellee was drunk at a public place in said city in the presence of two or more persons. The policemen observed Ivey walking across the street stag-

gering and apparently drunk; followed him, observing him closely, until he reached the Corinth Bank & Trust Company in said city, when he went up to the door of said building, and pulled open the screen door, and was trying to open the door of the bank. Thereupon, the policemen went up and asked him what he was trying to do, and he answered that he was trying to get in his room. They thereupon arrested him for being drunk and started on the way to the jail with him when the sheriff, with another occupant in his car, came along and offered to let the policemen take Ivey in the car which was done. The sheriff and the occupant of his car had also observed Ivey and decided he was drunk. Ivey had barely escaped being run over by an automobile in the street, and he put his raincoat on the running board of the sheriff's car, and the officers left it in the drug store to keep it from being taken by some one else.

After Ivey had been placed in jail, telephone inquiries came from his home, and the inquirers were informed that he was in jail charged with being drunk. Thereupon, members of his family came to the jail accompanied by a physician who made an examination of Ivey and decided that he was not drunk, but was sick, having fever, and on informing the police authorities of that opinion Ivey was released from jail and carried to his home, where his regular family physician examined him and found he had active malaria and some fever.

The appellee, J. S. Ivey, testified that he was arrested shortly after quitting work, which work was flagging a crossing in the city of Corinth; that he took a chill and did not know what he was doing from the time he was taken with a chill and his fever rose, until he was arrested; that he remembered being arrested, and he claimed he inquired of the officers who were taking him in custody why he was being thus taken, and was informed that it was for being drunk; and that he informed them

he was not drunk, that he had had nothing to drink, but that they carried him to jail notwithstanding.

The policemen testified that they inquired of him at the time they took him into custody who he was and where he lived, but that he was either unable, or refused, to tell them, and that they did not know who he was or where he lived.

It appears that after observing him, and before arresting him, one of the policemen asked the other who Ivey was, and the other answered that he did not know, that he had seen him somewhere, but could not place him.

Ivey testified that he knew the policemen and that they knew him, and he did not remember telling who he was, or where he lived, but he did not deny the statements.

The sheriff and the occupant of his car and the two policemen all testified that in their opinion the appellee (Ivey) was drunk, but they did not smell any liquor on his breath. The sheriff testified that people were drinking canned heat and that would give off no odor, but would intoxicate. The physicians who examined Ivey testified that there were other things besides liquor that would make him drunk, and would produce no odor.

Therefore, we have a case where to all appearances the appellee, Ivey, was drunk, and where he could have been drunk upon canned heat or other substance without producing any odor, such as whisky produces.

It clearly appears that the arrest was made in the evening about eight o'clock, and that the appellee (J. S. Ivey) quit his work about four o'clock, and that at the time of his arrest he was in an irresponsible mental condition, unable to take care of himself, or to know where he was or what he was doing.

The appellants requested a peremptory instruction, and moved to strike out the evidence at the close of the case, and that a directed verdict be granted because the

proof did not make out a case against them. The appellants also requested, and the court refused, the following instruction: "The court charges the jury for the defendant that if they believe from a preponderance of the evidence in this case that the plaintiff, J. S. Ivey, while on the streets of the city of Corinth, and in the presence of the arresting defendant officers was walking like he was drunk, talked like he was drunk, and either could not or would not tell his name or who he was, or where he lived, and otherwise so acted and conducted himself as to lead a reasonable and prudent person to believe that he was drunk, and that the defendants, W. E. Forsythe and John Busby, were at the time acting as police officers of the said city, and that they, acting in a reasonable and prudent manner, did believe the plaintiff was drunk, or was about to commit some breach of the peace, and that this occurred in their presence, in a public place, then they had a right to arrest the plaintiff and put him in jail, and it will be your duty to render a verdict for the defendants, even though the jury may further believe that after the arrest of the plaintiff it developed, if it did develop, that the plaintiff was at the time suffering from some mental and physical temporary disorder, or ailment, which caused him to so act and conduct himself as to indicate to and lead a reasonable and prudent person to believe that he was drunk, or that some breach of the peace was threatened or attempted."

They also requested an instruction substantially similar to this one which was also refused.

The court granted to the plaintiff, Ivey, among others, the following instruction: "The court instructs the jury for the plaintiff, that the defendants were not authorized to arrest the plaintiff without a warrant, except for an indictable offense committed, or a breach of the peace threatened or attempted in their presence, or for a felony committed by plaintiff not in their presence, and if you

believe from a preponderance of the evidence in this case that plaintiff was arrested by said defendants (John Busby and W. E. Forsythe) without a warrant and without any of the above mentioned causes for arrest, then you will find for the plaintiff.

Under the law, policemen are required to arrest persons without warrants for misdemeanors committed in their presence. Drunkenness in a public place is a misdemeanor. In making arrests, generally, for misdemeanors committed in the presence of officers, there must be in fact a misdemeanor committed or threatened, but in the case of drunkenness, policemen must act upon appearances, and the evidence in this case clearly presents a case where the policemen were warranted in believing that the plaintiff was drunk at the time of the arrest.

In our opinion, the preponderance of the evidence warrants the belief that he was, in fact, drunk. It is not necessary for a person to be intoxicated upon liquors such as whiskey; but he may be drunk by drinking things like canned heat, and by taking certain drugs which produce intoxication without producing the odor that whisky or alcohol produces.

In this aspect of the record, we think the defendants were entitled to the instruction first hereinabove set out. We think the evidence for the plaintiff upon this proposition as to whether he was drunk or not is not sufficient in probative force to establish his contention. But, even if Ivey's mental condition, and his irresponsibility, were not produced by drunkenness, but were produced by other causes, the policemen were still entitled to take him into custody and care for him until he became mentally responsible and able to take care of himself, or to place him with his family or friends who could take care of him.

At the common law, an officer was authorized to arrest an insane person without legal process where it was reasonably necessary so to do, for the protection of

the insane person or other persons, or the general public. 5 C. J. 421, notes 42, 43; 3 Miss. Law Journal 88, and the authorities there cited. In 5 C. J. 421, in case note 43, under the heading "Reason for Rule," it is said: "An insane person stands upon a different plane from that of a criminal; and for his own good, as well as for the protection of the community, he may often be restrained by any person, especially by any one having an interest in him, or by one whose safety may depend upon his detention, may be taken in charge, without a warrant. The restraint of an insane person or of a person claimed to be insane, is not designed as a punishment for an act done. It is well established that an insane person, without any adjudication, may lawfully be restrained of his liberty, for his own benefit, either because it is necessary to protect him against a tendency to suicide, or to stray away from those who would care for him, or to protect others from his assaults or other depredations, or because proper medical treatment requires it (citing authorities). Of course all such arrests or restraints must be reasonable and in good faith, and instructions as such restraints should be carefully guarded. But it is manifestly erroneous to say, as the trial court did in this case, that an insane person cannot be taken into custody or restrained in any other way than upon a warrant issued as prescribed by law." Bisgaard v. Duvall, 169 Iowa 711, 151 N. W. 1051.

Of course, the reason that authorizes the arrest and detention of insane persons is their inability to care for themselves and to protect others, and this does not require technical insanity. It need not be insanity in the technical sense, but if a person is mentally irresponsible, and unable to care for himself, officers may take him into custody until he can be delivered to the proper persons to take care of him, or authorized to deal with non compos mentis persons.

From the evidence in the case at bar, the officers did not know who Ivey was or where he lived, and could not learn those facts from him as he was unable to tell them. It is shown under all the testimony that he did not know who he was, or what he was doing, prior to this arrest, and his mental condition was such that he frequently had to stop and think before he could act for himself.

Under such circumstances it was permissible for the officers to place him in jail until his identity could be learned and until he could be restored to his mental faculties and give a proper account of himself. His presence in the street under the conditions shown by the evidence was dangerous to himself, and probably to others.

Under the circumstances disclosed in this record, we think the appellants should have been given the peremptory instruction.

Therefore, the judgment will be reversed, and judgment entered here for the appellants.

Reversed, and judgment here for the appellants.