# RAYMOND F. SMITH v. STANLEY HUBBARD, JR.

91 N. W. (2d) 756.

July 18, 1958—No. 37,304.

*Benedict S. Deinard* and *Leonard, Street & Deinard,* for appellant.

*James P. Miley, Swensen & Miley,* and *Thomas J. Burke,* for respondent.

DELL, CHIEF JUSTICE.

In this action plaintiff seeks to recover compensatory damages for personal injuries and mental pain and suffering and punitive damages as the result of an assault and battery alleged to have been committed upon him by defendant. The jury returned a verdict for plaintiff in the sum of $5,000 compensatory damages and $2,500 punitive damages. Defendant appeals from an order denying his alternative motion for judgment notwithstanding the verdict or for a new trial.

On Sunday, October 7, 1956, at about 2 p. m., defendant, then 23 years of age, drove his automobile through the village of St. Croix Beach on his way to his home in the village of St. Mary's Point. Plaintiff, then 34 years of age, testified that at that time in his capacity as constable he was parked in his official car in St. Croix Beach at the "Trading Post"; that he first had seen defendant's car come around a nearby corner "pretty fast"; that he had then watched defendant drive it on a side road to a stop sign about two blocks away where it had stopped; that defendant had then started off "very fast" and that he had followed him; that in making a right turn defendant's car "threw dirt and dust all over the place"; that when defendant had driven over a hill crest he was then about a block to the rear; that as he went over the same hill crest he had observed defendant turning a corner to the right; that he continued after defendant for two more blocks, at which time defendant had made a left turn; that after another block defendant had turned into a private driveway; and that he was then one-half block to

defendant's rear and had followed him up the driveway to defendant's house.

At some point while plaintiff followed defendant, as described, the cars crossed the line which separated the two villages, but the record does not establish when or where this occurred. Plaintiff testified that at times he had driven his car up to 45 or 50 miles an hour in the 30-mile-an-hour speed zones but he did not testify that this was in St. Croix Beach.

Plaintiff testified further that after he had stopped at defendant's residence he left his car and walked toward defendant and that at the same time defendant had left his car and walked toward plaintiff; that defendant had then asked him "What in the h-e-l-l [he] wanted there" and that when he replied that defendant had "violated the law," the latter "used some profane language" and ordered him "to get off his land" and said that "he was going to throw [him] off"; that plaintiff then informed him that he had "absorbed enough of his abuse and * * * was putting him under arrest"; that he took a few steps toward defendant and the latter had grabbed him by the shirt and pushed him against a building; that he had then pushed defendant away and that defendant had called to his brother for assistance; that the latter came from the house and separated the two parties; and that defendant then withdrew and entered the house. He admitted that defendant had not struck him at any time, and it is not disputed that the only result of the fracas was that buttons were torn from his shirt; two buttonholes thereon were ripped; and his badge had fallen to the ground and was broken in the scuffle. Defendant's version of the dispute was that plaintiff was the aggressor throughout.

Plaintiff testified that he then left the premises and shortly thereafter proceeded to the office of the justice of the peace in St. Croix Beach where he had caused warrants to be issued against defendant on charges of a traffic violation and assault. A few days later defendant procured a warrant from a justice of the peace of St. Mary's Point charging plaintiff with "assault in the third degree."

Plaintiff testified that, following newspaper and television publicity relating to the incident, he had been subjected to a good deal of "kidding" from employees at Minnesota Mining and Manufacturing

Company where he worked the day shift; that they had referred to him as "the law" and "Wyatt Earp" and other like designations which had caused him much embarrassment; and that a traffic offender whom he had arrested had been insolent to him after the publicity described. One newspaper article contained the item that plaintiff had said that he planned to file charges against defendant in municipal court in Stillwater. At defendant's preliminary hearing on the charge of second-degree assault in justice court on October 17, 1956, plaintiff caused an affidavit to be read wherein he stated that he had received two calls from Miles Lord, attorney general, in which the latter had suggested that the trial of Stanley Hubbard, Jr., be postponed, and further stated that he desired the court and the people of St. Croix Beach to know that, regardless of pressure of any kind exerted upon him, it was his object to discharge his duties as constable without favoritism to any party.

On the following day this affidavit received considerable publicity in the Minneapolis and St. Paul newspapers. Plaintiff testified that about 10 days later, at the request of Mr. Keith Kennedy, who was Mr. Lord's opponent in the forthcoming state election for attorney general, he had appeared with Mr. Kennedy on a television program where he repeated the statements made in the affidavit. Mr. Lord replied to the affidavit, stating that he had suggested a postponement of defendant's trial for a "cooling-off" period and that plaintiff should not "use the court to settle a personal score"; that he investigated a number of justice courts on complaints that they were conducting "speed traps" for monetary income rather than for protection of life and property and that the greatest number of complaints had come from St. Croix Beach. These charges and countercharges received substantial publicity.

Plaintiff testified further that on one occasion he had been followed from his employment at Minnesota Mining and Manufacturing Company by a man in an automobile belonging to KSTP television and radio station of which defendant was vice president and that he had talked to the driver of such car, but it does not appear that the latter made any statement or admission that he was pursuing plaintiff at defendant's request or suggestion. Plaintiff testified that on other occasions he had been followed by cars of the state highway department and by other private cars, but again there was nothing to connect defendant therewith.

He admitted that he was familiar with methods used by police departments and that on one occasion he had been followed in connection with his commission of a traffic violation.

Some evidence was submitted that there had been antagonism between plaintiff and members of defendant's family for over a year prior to the present incident. Defendant stated that during this period members of his family had been arrested or given tickets for traffic violations in St. Croix Beach on at least seven different occasions. Plaintiff admitted he had given traffic tickets to various members of defendant's family on at least five different occasions for such offenses as "leaving car keys in the ignition"; "backing onto a roadway"; and like charges.

On appeal defendant contends that (1) the trial court erred in denying his motion for dismissal of the action at the close of plaintiff's testimony and his motion for a directed verdict at the close of the evidence, both based on the ground that the evidence failed to establish that defendant had committed an offense within plaintiff's jurisdiction in the village of St. Croix Beach on October 7, 1956, so as to justify plaintiff's presence upon defendant's property; (2) the trial court erred in instructing the jury that, if it found that plaintiff *had reasonable ground for believing that the defendant had violated the law in his presence"* (italics supplied), then he was acting within the statutes and lawfully upon the Hubbard premises; and (3) the awards for both compensatory damages and punitive damages were not justified by the evidence, were excessive, and were given under the influence of passion and prejudice.

A constable, in fresh pursuit of a party who has committed a criminal offense within his jurisdiction, may go beyond its boundaries and pursue that person anywhere in the state in order to apprehend and arrest him to the same extent that the officer might have effected the arrest within his own jurisdiction.[1] It is not disputed that plaintiff was a constable; that he was in fresh pursuit of defendant up to the time when he made the arrest; that in the pursuit he went beyond the boundaries of the village of St. Croix Beach; and that in making the arrest plaintiff was not armed with a warrant. Thus the question presented is whether

[1]M. S. A. 629.40.

an offense was committed within plaintiff's jurisdiction for which he had the authority to make an arrest.

In the absence of a warrant, a peace officer's power of arrest in non-felony cases is limited to public offenses committed or attempted in his presence[2] and within his jurisdiction.[3] The terms "public offense" in M. S. A. 629.34(1) and "criminal offense" in § 629.40 include both felonies and misdemeanors, even those which do not amount to breaches of the peace.[4] Our statutes provide that violations of the Highway Traffic Regulation Act constitute misdemeanors[5] and are, therefore, offenses for which violators can be arrested without warrants by peace officers in whose presence they are committed and who are in fresh pursuit. Two violations were attributed to defendant: (1) Driving at an excessive rate of speed (plaintiff testified that he had clocked defendant at from 40 to 50 miles an hour which, in a municipality, is unlawful[6]), and (2) careless driving, the offense with which he was subsequently charged. Certainly if either of these offenses was committed within the limits of the village of St. Croix Beach and in plaintiff's presence, his right to arrest defendant is unquestioned.

Neither party to this action saw fit to introduce a map or diagram in order to pinpoint the exact location of the various events. Nevertheless, from the record it appears that there was sufficient evidence from which the jury could infer that defendant was guilty of at least driving carelessly within St. Croix Beach, if not also of speeding. He had rounded a corner "pretty fast"; had made a rolling rather than a complete stop at a through highway; and then had started off again "very fast"—all within St. Croix Beach. He later executed a right turn, throwing "dirt and dust all over the place," and thereafter was seen "slewing around

---

[2] § 629.34(1).

[3] State v. Benson, 171 Minn. 292, 213 N. W. 910; State v. Cantieny, 34 Minn. 1, 24 N. W. 458; Opinions Attorney General, No. 266-B-11, Dec. 18, 1941, and No. 785-B, Mar. 5, 1947, Sept. 12, 1952, and Sept. 4, 1957.

[4] State v. Benson, 171 Minn. 292, 213 N. W. 910; State v. Cantieny, 34 Minn. 1, 24 N. W. 458; Wahl v. Walton, 30 Minn. 506, 16 N. W. 397.

[5] §§ 169.02, subd. 2, and 169.89.

[6] § 169.14, subd. 2(1). See, Butler v. Engel, 243 Minn. 317, 68 N. W. (2d) 226.

* * * [another] corner to the right." While it is not clear from the record that these latter acts occurred in St. Croix Beach, neither is it clear that they did not. The jury, which was drawn from the local community, was in the best position to decide, and absent anything in the verdict manifestly contrary to the evidence, its decision should not be set aside. Defendant's assertion that he was driving carefully and observing the speed limit did no more than create a question for the trier of facts to resolve. Certainly it did not meet the strict requirement which would have entitled defendant to a directed verdict in his favor—that different minds, viewing the facts in the light most favorable to the plaintiff, could reasonably arrive at but one result.[7]

■ Nor do we agree that the trial court erred in instructing the jury that plaintiff was acting properly under the statute if he "had reasonable ground for believing that the defendant had violated the law in his presence." The standards to be used in determining whether or not an offense has been committed or attempted in the presence of an officer were laid down in State v. Pluth, 157 Minn. 145, 151, 195 N. W. 789, 791, where we said:

"* * * It cannot be said that a criminal offense is committed in the presence of an officer, unless the acts constituting the offense become known to him at the time they are committed through his sense of sight or through other senses. Although a person may actually be committing a criminal offense, it is not committed in the presence of an officer within the meaning of the statute, if the officer does not know it. And, where the officer could not observe nor become cognizant of the act constituting the offense by the use of his senses, it could not be committed in his presence so as to authorize an arrest without a warrant."

Clearly two elements must appear before an offense is committed in the presence of an officer: (1) He must become aware of the acts as a result of his sensory perception, and (2) he must infer that the acts constitute an offense. Thus, Hilla v. Jensen, 149 Minn. 58, 182 N. W. 902, is distinguishable. In that case the arresting officers merely believed

---

[7] Waldo v. St. Paul City Ry. Co. 244 Minn. 416, 425, 70 N. W. (2d) 289, 295; LeVasseur v. Minneapolis St. Ry. Co. 221 Minn. 205, 212, 21 N. W. (2d) 522, 526, and cases cited in note 6 therein.

that the plaintiff was (149 Minn. 62, 182 N. W. 903) "an inmate of a house of ill-fame, and so was committing a misdemeanor by violating a city ordinance." Only part of the building where plaintiff was arrested was suspected as being used for that purpose and he was neither seen nor heard therein. The officers, therefore, failed to meet the first requirement set forth above and were not justified in taking plaintiff into custody.[8]

In the instant case, however, plaintiff both saw the acts which constituted the offense and, in the exercise of his judgment, concluded that they amounted to a misdemeanor. In Garske v. United States (8 Cir.) 1 F. (2d) 620, 622, the court said:

"* * * for a crime, which they have probable cause to believe is being committed in their presence, though it be a misdemeanor, duly authorized peace officers may make arrest without a warrant. The probable cause which will justify arrest for a misdemeanor without a warrant must be a judgment based on personal knowledge acquired at the time through the senses, or inferences properly to be drawn from the testimony of the senses."

Therefore all that is required of an officer is that he see the acts and from them infer that they are sufficient to constitute the offense. Upon this reasoning it has been held that a peace officer without a warrant may arrest a person when the latter merely gives the appearance of being intoxicated[9] even though it is subsequently learned that he is not.[10] The nature of the offenses may vary but so long as all of the acts are committed in his presence it is within the officer's statutory authority to determine whether they are such as to constitute a misdemeanor and, if so, to arrest the violator without a warrant.[11]

---

[8]Cf. City of Evanston v. Hopkins, 330 Ill. App. 337, 71 N. E. (2d) 209.

[9]Forsythe v. Ivey, 162 Miss. 471, 139 So. 615; People v. Belcher, 302 N. Y. 529, 99 N. E. (2d) 874; Johnson v. Dist. of Columbia (D. C. Mun. App.) 119 A. (2d) 444.

[10]Goodwin v. State, 148 Tenn. 682, 257 S. W. 79.

[11]Giannini v. Garland, 296 Ky. 361, 177 S. W. (2d) 133 (fishing without a license even though it may later be determined that a license is not required); Schultz v. Greenwood Cemetery, 190 N. Y. 276, 83 N. E. 41 (removing flowers from a grave); State v. Reynolds, 101 Conn. 224, 125

Surely no case better illustrates, than does this one, the instances in which probable cause to believe that certain acts constitute a misdemeanor should justify an arrest without a warrant, provided those acts are committed in the officer's presence. The statutory prohibition against careless driving is contained in § 169.13, subd. 3, which provides:

"No person shall operate or halt any vehicle upon any street or highway carelessly or heedlessly in disregard of the rights or the safety of others, or in a manner so as to endanger, or be likely to endanger, any person or property."

Whatever standards this language conveys, in every case it must always be the judgment of the peace officer in the first instance which determines whether or not a violation has occurred. Carelessness is synonymous with ordinary negligence,[12] and thus, in every instance where it is alleged, a fact question is raised upon which an officer's decision is always subject to the final decision of the trier of fact. Nothing more is required than that the acts be observed and that the officer infer from them that they are sufficient to constitute a misdemeanor.[13] The rule applies even where the alleged violator is subsequently acquitted in a traffic court, for that is of no consequence in so far as the validity of the arrest itself is concerned.[14] Therefore, since the acts were all committed in

A. 636 (conducting a saloon); United States v. Wiggins (D. Minn.) 22 F. (2d) 1001; United States v. Stafford (E. D. Ky.) 296 F. 702; Ingle v. Commonwealth, 204 Ky. 518, 264 S. W. 1088; King v. State, 92 Okl. Cr. 389, 223 P. (2d) 773; Abbott v. State, 30 Okl. Cr. 98, 235 P. 550 (transporting intoxicating liquor); People v. Esposito, 118 Misc. 867, 194 N. Y. S. 326 (carrying a gun without a license); Coverstone v. Davies, 38 Cal. (2d) 315, 239 P. (2d) 876 (unlawful assembly to view hot-rod race); Griffin v. State, 200 Md. 569, 92 A. (2d) 743. And see, United States v. Hall (D. C.) 126 F. Supp. 620 (conducting a lottery).

[12]State v. Hayes, 244 Minn. 296, 70 N. W. (2d) 110.

[13]See, United States v. Rembert (S. D. Tex.) 284 F. 996; Cave v. Cooley, 48 N. Mex. 478, 152 P. (2d) 886; Moore v. State (Okl. Cr.) 306 P. (2d) 358. And see, Webster v. State, 96 Okl. Cr. 44, 248 P. (2d) 646; Robedeaux v. State, 94 Okl. Cr. 171, 232 P. (2d) 642; Granado v. State, 161 Tex. Cr. 128, 275 S. W. (2d) 680.

[14]Brown v. State (Fla.) 91 So. (2d) 175, 177. And see, O'Dell v. State, 80 Okl. Cr. 194, 158 P. (2d) 180.

plaintiff's presence and because from them he had reasonable cause to believe that they constituted a misdemeanor, we conclude that he had the right either to arrest defendant in St. Croix Beach or to pursue him beyond its boundaries for that purpose and to use whatever force was necessary in so doing.[15]

■ Even if it were to be assumed that some of the acts here involved were committed beyond the borders of St. Croix Beach, the plaintiff's power to arrest defendant still existed. Section 629.37 extends to private citizens the right to arrest for public offenses committed or attempted within their presence and § 629.39 gives them the right of doing so while in fresh pursuit. The term "public offense" in the cited sections likewise embraces misdemeanors which do not amount to breaches of the peace.[16] Moreover, the attorney general's office has often advised village peace officers that when they see offenses committed outside their village limits they may still arrest without warrants in the exercise of the right conferred upon them as private citizens.[17] The result is that plaintiff was acting either as a peace officer or as a private citizen. In either capacity he had the power to arrest defendant for a misdemeanor committed or attempted in his presence or to pursue him in order to do so. It was in one role or the other that he saw *both* the acts of speeding and what he believed to be careless driving. The arrest was, therefore, justified.

■ We find no merit in defendant's contention that § 629.31 foreclosed his arrest without a warrant for a misdemeanor committed on Sunday. The attorney general has held that an officer's authority to arrest without a warrant is not limited by this section because it is not intended to relate to arrests for crimes committed in the arresting officer's presence.[18] We think his position must be sustained. Any other interpretation would negative the effect of the "fresh-pursuit" statute and would be an invitation to commit misdemeanors on Sunday. This does not appear to be the intent of the legislature and we should not read

[15] § 619.40(1).

[16] Judson v. Reardon, 16 Minn. 387 (431).

[17] Opinions Attorney General, No. 785-B, Mar. 5, 1947, Sept. 12, 1952 (by implication), and Sept. 4, 1957.

[18] Opinion Attorney General, No. 605-A, Jan. 25, 1943.

it into the statute.

■ We do agree, however, that the evidence does not sustain the verdict. The jury awarded plaintiff $5,000 as compensatory damages and $2,500 as punitive damages. The latter are in the nature of a penalty and upon the record we find that they are reasonable. But we are convinced that the former are excessive. It is undisputed that plaintiff sustained no real physical harm. Although only his shirt was torn and his badge broken, this, coupled with the pushing, was sufficient physical contact to constitute a battery. It was, therefore, proper to allow recovery for humiliation and mental suffering.[19] That suffering was apparently limited to "ribbing" and "kidding" by his friends and coworkers, including references to him as "Wyatt Earp"; to some defiance by other motorists; to a strain placed upon members of his family; and to his being followed by a KSTP car and perhaps by unidentified cars from the State Highway Department—all as a result of the publicity about the matter.

Upon these facts we believe that $1,000 compensatory damages would amply compensate him for any loss which he sustained. Therefore there should be a new trial on the issue of damages unless, within ten days after the filing of the remittitur in the court below, the plaintiff shall file a written consent to a reduction of the total verdict to $3,500, interest being allowed thereon from the date the verdict was originally entered. In the event of compliance with such condition, the order appealed from shall be and is affirmed.

Reversed on condition.

FRANK T. GALLAGHER, JUSTICE (concurring specially).

I concur specially with the majority but believe that the punitive damages are still too high. Inasmuch as such damages are in the nature of a penalty, it seems to me that $1,000 would represent a substantial amount under the record here.

THOMAS GALLAGHER, JUSTICE (dissenting).

I am of the opinion that plaintiff failed to establish that defendant had committed a misdemeanor in his presence within the village of St.

---

[19]Smith v. Salem, 150 Minn. 418, 185 N. W. 394.

Croix Beach. He testified that he did not consider defendant's first stop at the stop sign in St. Croix Beach a traffic violation but felt that his approach to it showed a tendency for carelessness and so decided to follow him. There was no evidence that defendant sought to escape plaintiff, or that he was aware that he had violated any law. He had seen plaintiff parked at the "Trading Post" but did not know plaintiff was following him until he turned into his driveway. The route he followed was the normal route to his home, and he testified that his speed in proceeding there had not exceeded 15 miles per hour.

At some point while plaintiff followed defendant as described, the cars crossed the line which separated the two villages, but the record does not establish when or where this occurred. Plaintiff testified that at times he had clocked his own car at up to 45 or 50 miles per hour in the 30-mile-per-hour speed zones, but he did not testify that this was in St. Croix Beach, or that this was the speed at which defendant was traveling. That it was not is evident from the fact that plaintiff gained 1½ blocks on defendant in a distance of about 1 mile.

As to careless driving, there was no evidence beyond plaintiff's unsupported conclusion that defendant was guilty of this charge. There was no testimony that he operated or halted his vehicle carelessly or in disregard of the rights or safety of others or in a manner to endanger any person or property so as to be in violation of M. S. A. 169.13, subd. 3. There was no evidence of other traffic or pedestrians on this graveled side road. Plaintiff's testimony indicated that defendant was not in his sight during most of the period in which plaintiff followed him, since he testified that he had lost defendant after the latter had gone over a hill crest and subsequently only viewed him turning corners until almost up to defendant's driveway, and that on the route four such turns were required. He testified that defendant's car threw dust as it made turns, but as the trial court stated: "It is common knowledge that if you drive on a graveled road that it is going to raise dust."

Under § 629.34 no authority is vested in a police officer to arrest another without warrant because of a mere belief that such person has committed a misdemeanor. Hilla v. Jensen, 149 Minn. 58, 182 N. W. 902. The authority of a peace officer to arrest without warrant outside his jurisdiction is covered by § 629.40, subd. 1, which provides that:

"In any case wherein any sheriff, * * * constable, * * * may by law, either with or without a warrant, arrest any person for or upon a charge of any criminal offense *committed within his jurisdiction,* and the person to be arrested escapes from or is out of the county, city, town, or village, the officer may pursue and apprehend the person to be arrested anywhere in this state." (Italics supplied.)

Based upon this court's construction of § 629.34, as hereinbefore set forth, it is clear that under § 629.40, subd. 1, no authority is vested in a peace officer to arrest without warrant beyond the limits of his jurisdiction for a criminal offense committed within his jurisdiction unless a felony is involved (Ehrhardt v. Wells, Fargo & Co. 134 Minn. 58, 158 N. W. 721; State ex rel. Olson v. Leindecker, 91 Minn. 277, 97 N. W. 972), or unless the officer has witnessed the commission of or attempt to commit a misdemeanor within his jurisdiction and in "fresh pursuit" of the offender has passed beyond the limits of his jurisdiction to arrest the offender therefor.[20] Hilla v. Jensen, *supra*; see, Opinions Attorney General, No. 266-B-11, Dec. 18, 1941, and No. 785-B, Mar. 5, 1947, Sept. 12, 1952, and Sept. 4, 1957; 4 Am. Jur., Arrest, § 51.

In the instant case no felony is involved, and, accordingly, under §§ 629.34 and 629.40, subd. 1, plaintiff was not authorized to pursue defendant beyond the limits of St. Croix Beach and onto his property in St. Mary's Point for the purpose of arresting him unless plaintiff had witnessed defendant's commission of or attempt to commit a misdemeanor in the village of St. Croix Beach, and was in "fresh pursuit"

---

[20]There is no claim that §§ 629.37, 629.38, and 629.39, authorizing arrests by private presons, were complied with or are here applicable. Section 629.37(1) provides that a private person may arrest another "For a public offense committed or attempted in his presence." Section 629.38 provides that "Before making an arrest such private person shall inform the person to be arrested of the cause thereof and require him to submit, except when he is in the actual commission of the offense or when he shall be arrested on pursuit immediately after its commission." Section 629.39 provides that "Every private person who shall have arrested another for the commission of a public offense shall, without unnecessary delay, take him before a magistrate or deliver him to a peace officer."

of defendant to arrest him therefor.

But the evidence fails to establish that such a situation prevailed so as to justify plaintiff's presence upon defendant's property. Plaintiff conceded that defendant had not violated any law prior to the time that he left the stop sign to proceed to his home; that he then followed defendant, not because defendant had violated any law, but because he had observed a "tendency for carelessness," not a "definite violation." There is no ordinance that forbids an automobile driver from throwing dust, sand, gravel, and pebbles from the car wheels in turning a corner. There is nothing to establish that plaintiff had witnessed any acts of defendant that might be regarded as a public or criminal offense within the limits of St. Croix Beach. His testimony that his own speed approximated 45 to 50 miles per hour and was reduced to a "controllable speed" as he made turns at corners did not relate to St. Croix Beach. Further, he testified that, during his pursuit which covered about a mile, he had gained upon defendant from the two blocks distance which separated them at the stop sign to a distance of but one-half block at defendant's driveway. Certainly this is not adequate to support a finding that defendant had exceeded the lawful rates of speed within St. Croix Beach or had otherwise committed a misdemeanor therein.

That plaintiff did not seriously contend that defendant had exceeded the lawful speed limits within St. Croix Beach and was being pursued for that offense is indicated by the fact that his only comment to defendant when he first approached him in the latter's driveway was that defendant had "violated the law" (although later he added to this statement that he had also said that defendant "was speeding"), and by the fact that the warrant signed by plaintiff charged only "careless driving." As to the latter, no evidence was presented as to what constituted careless driving by defendant, or as to where within St. Croix Beach it had occurred. In my opinion such evidence falls far short of sustaining a finding that plaintiff had witnessed the commission of a criminal offense within the limits of St. Croix Beach and was in "fresh pursuit" of defendant therefor when he entered upon defendant's premises.

It would follow therefore that plaintiff was not lawfully upon defend-

ant's premises at the time he claims that defendant assaulted him. It is well settled that any unauthorized entry upon the premises of another is a trespass, 19 Dunnell, Dig. (3 ed.) § 9684, and that the owner of the premises may undertake reasonable force, if necessary, to terminate another's unlawful intrusion thereon. He has the right to defend and protect his person and his property against aggression and if he reasonably believes that this can be done only by the immediate infliction of force upon the intruder, he may lawfully take such measure, provided the force used is reasonable and, in case of trespass to property, he has first requested the intruder to desist or withdraw. This right is recognized by laws of all civilized communities. 4 Am. Jur., Assault and Battery, § 61; Restatement, Torts, § 77.

M. S. A. 619.40 provides in part:

"The use, attempt, or offer to use force or violence upon or toward the person of another shall not be unlawful in the following cases:

\* \* \* \* \*

"(3) When used by a party about to be injured \* \* \* in preventing or attempting to prevent *an offense against his person, or a trespass or other unlawful interference with real or personal property* lawfully in his possession, in case the force is not more than shall be necessary;" (Italics supplied.)

Under this statute and the principles cited, defendant had the right to demand that plaintiff leave his premises and to use reasonable force to terminate plaintiff's intrusion thereon; and to resist plaintiff's attempt to take him into custody. The record establishes that, in taking such measures, he did not act maliciously or with more force than was reasonably necessary. Plaintiff admitted that at no time did defendant strike him; that the most defendant did was to grasp and push plaintiff against a building; that he sustained no physical injuries as a result; and that the only damage was the torn buttonholes on his shirt and the buttons removed therefrom. He weighed approximately 180 pounds and had formerly been trained as a boxer. Defendant felt compelled to call his brother for assistance and immediately withdrew from the scuffle and went into his house after his brother had appeared and separated the parties.

In my opinion plaintiff failed to sustain his burden of establishing that defendant was guilty of an unjustified assault and battery upon him. He was unlawfully upon defendant's premises and defendant was within his rights in using reasonable force in seeking to terminate his presence thereon and in resisting his unlawful attempts to place him in custody. Accordingly, I believe that defendant's motion for a directed verdict at the close of the testimony should have been granted.

I am further of the opinion that the verdict as reduced by the majority opinion herein is still far too excessive to be sustained, particularly since the record reveals that the publicity with attendant embarrassment which plaintiff claims he suffered as a result was for the most part due to plaintiff's own activities and statements in the proceedings and in view of the further fact that he sustained no actual physical injuries whatever.