### In re James W. KEENAN and Stephanie A. Keenan, Debtors.

### No. BKY 10–34521.

United States Bankruptcy Court, D. Minnesota.

Jan. 7, 2011.

Thomas F. Miller, Thomas F. Miller, P.A., Wayzata, MN, for Debtors.

## ORDER SUSTAINING TRUSTEE'S OBJECTION TO CLAIM OF EXEMPTION

GREGORY F. KISHEL, Bankruptcy Judge.

This Chapter 7 case came before the Court on October 26, 2010, on the Trustee's objection to the Debtors' claim of exemption in various sorts of assets. Trustee Nauni Jo Manty appeared by her attorney, Jacqueline D. Kuiper. The Debtors appeared by their attorney, Arian Tavakolian. The following order is based on the record made for the Trustee's objection, including briefing and argument by counsel.

The Debtors filed a voluntary petition under Chapter 7 on June 18, 2010. In their original Schedule B, for personal property, they included the following entry under Item 21, for "Other contingent and unliquidated claims of every nature":

> Personal injury claims against representatives of Catholic Church in Minnesota. In "John Doe" litigation in St. Paul

They designated these "claims" as the property of "Husband," i.e., James Keenan.

Via an amended Schedule C filed on October 8, 2010, James Keenan claimed this asset as exempt. He cited "Unknown" as its current value and as the value of the claimed exemption. He recited the following as the legal authority for the claimed exemption:

> 11 U.S.C. § 522(d)(5) Husband intends to allocate all otherwise unused 522(d)(5) exemptions to this asset
>
> 11 U.S.C. § 522(d)(11)(D)

The Trustee's objection to this claim of exemption is the matter at bar.[1] She concedes that the unused portion of available rights of exemption under the "wild card"

provision of 11 U.S.C. § 522(d)(5) may be applied to the value of the claim for damages in question.[2] However, she challenges James Keenan's invocation of 11 U.S.C. § 522(d)(11)(D). That statute provides an exemption in bankruptcy for:

> The debtor's right to receive, or property that is traceable to—
>
> . . .
>
> (D) a payment, not to exceed $20,200, on account of personal bodily injury, not including pain and suffering or compensation for actual pecuniary loss, of the debtor or an individual of whom the debtor is a dependent. . . .

The Trustee's objection goes to the basis and nature of the claim in litigation. The question she poses is whether the alleged wrong underlying the claim is within the class specified by the statute's language.

The record presented on that issue consists of three documents. The first is the complaint in a lawsuit commenced by James Keenan under the designation of "John Doe 76C."[3] The complaint is brought in the name of only one plaintiff, identified as such. The litigation is venued

---

1. In the Debtors' original Schedule C, they claimed exemptions under Minnesota state law, and invoked Minn.Stat. § 550.37, Subd. 22 for this asset. The Trustee timely objected to that claim of exemption (and others). In response, the Debtors amended their claim of exemptions to invoke those available to them under 11 U.S.C. § 522(d). (Minnesota is among the minority of states that have not opted out of the "federal exemptions" for bankruptcy cases.) Pursuant to Loc. R. Bankr.P. (D. Minn.) 4003–1(a), the Trustee's previous objection was deemed an objection to the amended claims of exemption. In the wake of the amendment, the only issue presented for decision was that relating to the claims in suit.

2. The amount exemptible, of course, will be that value that is not exhausted by the application of § 522(d)(5) to other assets that are not subject to more specific provisions of

§ 522(d). And, the maximum amount will be limited to that available to James Keenan alone, as the person who holds the claim in question.

3. Ordinarily, this order would have been captioned, styled, and worded so as to defer to the same sensitivities that prompted the "John Doe" form of caption in the state court. However, after the Trustee's objection was taken under advisement, local media reported that James Keenan had publicly disclosed his identity in response to certain developments in the state-court litigation. E.g., Saint Paul PIONEER PRESS, Dec. 1, 2010. The nature of those developments is not part of the record for the Trustee's objection, which was closed at the hearing. In any event, they are not relevant to the issues treated today, though they may affect how various aspects of this bankruptcy case go forward.

in the Minnesota State District Court for the Second Judicial District, Ramsey County. The Archdiocese of St. Paul and Minneapolis and the Diocese of Winona are the named defendants.[4] The other two are one-page declarations executed separately by James Keenan and his attorney in the state-court lawsuit. These declarations were prepared specially for the defense of the Trustee's objection.

These documents are all the evidence that James Keenan brought forth, toward a basis for characterizing the claims in litigation as exemptible under the statute. The Trustee has not submitted any separate materials; she structures her argument on the content of James Keenan's submissions alone.

From that content, the following bears on the nature of the claims in suit:

1. In the complaint, James Keenan alleges that, "[i]n approximately 1980–1982, when [he] was approximately 13–15 years of age," one Father Thomas Adamson, "an ordained Roman Catholic priest employed" by the two defendants, "engaged in unpermitted, harmful and offensive sexual contact" with him, while Adamson was assigned to the parish attended by James Keenan's family. He alleges that officials of both defendants, including a bishop and an archbishop, had known before then that Adamson had repeatedly committed acts of sexual abuse against minors while serving as a parish priest elsewhere. James Keenan frames the defendants' liability to him under a number of pleaded theories: several varieties of negligence (in failing to provide "a reasonably safe learning and spiritual environment" to James Keenan, and in supervising and retaining Adamson as a priest); vicarious liability; and fraud via active misrepresentation and failure to disclose Adamson's past.

2. James Keenan then pleads that he "suffered a traumatic amnesia, or memory repression, of the sexual abuse when he was a child," having "no memory of [it] from the time that he was a child until July of 2002."

3. At the close of its general pleading of facts, the complaint recites:

As a direct result of the sexual abuse and sexual exploitation, Plaintiff has suffered and will continue to suffer great pain of mind and body, severe and permanent emotional distress, physical manifestations of emotional distress, embarrassment, loss of self-esteem, humiliation and psychological injuries, was prevented and will continue to be prevented from performing his normal daily activities and obtaining the full enjoyment of life, has incurred and will continue to incur expenses for medical and psychological treatment, therapy and counseling and, on information and belief, has incurred and will continue to incur loss of income and/or loss of earning capacity.

4. James Keenan's unsworn declaration consists of six paragraphs. All of them are three lines or less in length.

5. After stating that Adamson "did sexually abuse and exploit [him] when [he] was a minor child," James Keenan states:

a. The abuse "included actual physical abuse of a sexual nature," Adamson

---

4. In the complaint, those two ecclesiastical organizations are identified as Minnesota non-profit corporations that "employed" an individual alleged to have inflicted harm on James Keenan. In their briefing, counsel for the Trustee and the Debtors both identify the claim as being "against the Catholic Church."

This tossed-off bit of jargon fails to reflect the structure of the pleaded theory of liability. It also fails to reflect the hierarchy of organization within the parent-denomination of the named defendants, or the legal form of its components, under either civil or canon law.

having "engaged in unpermitted, harmful contact with [his] person";

b. "The physical abuse ... resulted in both bodily injury to [his] person, physical manifestations of emotional and psychological stress, and other physical effects"; and

c. The "abuse occurred on at least three separate and distinct occasions over the course of three years."

6. The unsworn declaration of Jeffrey R. Anderson, Esq., primarily functions as a vehicle to farm the complaint into the record here.[5] The affidavit consists of two paragraphs.

7. The first paragraph recites only that Anderson has represented James Keenan "for a number of years in the prosecution of [the] civil action" in the Ramsey County District Court.

8. In the second, Anderson states, in so many words but only in so many:

[T]he underlying cause of action is for physical bodily injury by reason of sexual abuse of him by a Catholic priest by the name of Tom Adamson who is a serial offender.

Nothing else in the record identifies the acts that constituted the sexual abuse accused, the impact on James Keenan's body of the battery alleged, or the immediate physical effects of the non-consensual sexual exploitation that is the core of his claim for damages. From this, then, one is supposed to conclude that the cause of action could yield an award of damages "on account of personal bodily injury, not including pain and suffering or compensation for actual pecuniary loss"—as § 522(d)(11)(D) requires to enable an exemption in bankruptcy.

■ Unfortunately for James Keenan, the record does not bear this out. He has not met his responsive burden as the claimant of a properly-challenged exemption, of proving that a given asset has the nature or function that would place it within a legislatively-determined class of property protected from the claims of creditors.[6]

■ The reason goes down to the three key words that established the statutory classification, the requirement of a *"personal bodily injury"* that would give rise to a right to recover damages from a party that inflicted or caused the injury. The harm must have been "personal" to the debtor claiming the exemption, i.e., it must have been suffered by him or her.[7] But,

---

5. Anderson had subscribed the complaint as counsel.

6. As a formal matter, Fed. R. Bankr.P. 4003(c) imposed an initial burden on the Trustee, as objector, "of proving that the exemptions [were] not properly claimed." She brought her objection forward by pointing out two things: the complaint in James Keenan's state-court lawsuit did not identify a "personal bodily injury" in the particular, physically-oriented sense previously described, as the predicate wrong on which he based his suit against the defendants he named; and all of the complaint's references were either to injuries exclusively psychological in origin, or to physical manifestations of such psychological injuries. This was enough to set the issue in motion, and to shift the burden to James Keenan. But whether the Trustee brought forth evidence of her own or not, it was still James Keenan's obligation to show, on the facts in the record, "that the claimed personal injury award could reasonably fall within an exempt category" under applicable statute. *In re Gagne*, 179 B.R. 884, 886 (D.Minn.1994). *See also In re Ciotta*, 222 B.R. 626, 629 (Bankr.C.D.Cal.1998). In a case like this, that task was at least as much legal in nature as it was factual.

7. In one early decision under § 522(d)(11)(D), the court did not even require the predicate "bodily injury" to have been suffered by the debtor claiming the exemption. *In re Lynn*, 13 B.R. 361, 362–363 (Bankr.W.D.Wis.1981) (debtor's claim for loss of consortium held

more crucially, it must have constituted an "injury" that was "bodily" in nature.

■ The phrase "bodily injury" is not defined in the Bankruptcy Code. However, there is a single, common understanding of its meaning in both the vernacular (i.e., "plain meaning") and in the law. *See, e.g.,* BLACK'S LAW DICTIONARY 801 (8th ed. 2004) (defining "bodily injury" as "[p]hysical damage to a person's body"). The common notion of an "injury" that is "bodily" requires something *physical* that is *serious*—caused by an impact that invades, disturbs, or alters the preexisting integrity of the human body and which is the proximate cause of a change in the form or function of a component of the body, its structure, or its functions.[8] At least under § 522(d)(11)(D), the change may be temporary or long-term; though the legislative history cites the loss of a limb as an example of an injury,[9] the statutory language does not require permanency. Thus, the class of injuries is not limited to those that

have caused severe damage to basic bodily structures, permanent disfigurement, or irremediable impairment of function, mobility, or the like.[10]

■ But the most basic point is inescapable: the statutory language presupposes a chain of causality between a tortfeasor's actions toward the physical person of the debtor-claimant ("bodily") and a harmful impact on that physical person ("injury") for damages to fall under the protection of § 522(d)(11)(D).

There is nothing in the record to evidence a claim by James Keenan that he incurred a "bodily injury" of that sort from the actions that he alleges Adamson took against him when he was a vulnerable minor. He has certainly pleaded a battery at Adamson's instance as a predicate tort, in the sense of an intentional, unpermitted and offensive touching of his person. *E.g., Paradise v. City of Minneapolis,* 297 N.W.2d 152, 155 (Minn.1980). But, under basic principles of tort law, a battery need

exemptible under § 522(d)(11)(D), since state law considered claim as "dependent on" and "derivative" of bodily injury suffered by debtor's spouse, therefore making claim for loss of consortium "on account of personal bodily injury"). The facts of the case at bar do not require an evaluation of the soundness of this holding.

8. It is recognized, of course, that the *damages* on account of a bodily injury may be recovered in compensation for physical and non-physical consequences alike, i.e., pain, disability, disfigurement, embarrassment, and emotional distress. *Brua v. Minnesota Joint Underwriting Ass'n,* 778 N.W.2d 294, 300 (Minn.2010). But that, conceptually, is only a description of the *harms* that may flow from the underlying *injury, i.e.,* the manifold, real-life consequences of the threshold invasion of a legally-protected interest—here, the right to the *physical* integrity of one's body. *Cf. In re Stage,* 321 B.R. 486, 492–493 (8th Cir. BAP 2005) and *In re Langeslag,* 366 B.R. 51, 58–59 (Bankr.D.Minn.2007) (discussing distinction between "injury" and "harm" in understand-

ing of RESTATEMENT (SECOND) OF TORTS, §§ 7(1) and 7(2) (1964)). The task at bar is the conceptual identification of the threshold *injury* within the statute's contemplation.

9. H.R. REP. No. 595, 95th Cong., 1st Sess. 324 (1977).

10. Section 522(d)(11)(D) has not generated much case law, and few of the published decisions give much guidance for the problem at bar. Further limiting its utility, the phraseology of the published analysis has its ambiguities. Among them is the uncertainty whether the exemption requires permanency in the predicate injury. *Compare In re Marcus,* 172 B.R. 502, 505 (Bankr.D.Conn.1994), *with In re Barner,* 239 B.R. 139, 145 (Bankr. W.D.Ky.1999) (applying cognate language in Kentucky statute). The *Barner* court observed that an "overwhelming majority of courts" have rejected a construction requiring permanency. This characterization is a little overstated—the scale of the debate is really pretty small—but the construction itself is the more defensible one.

not have caused damaging physical impact in itself, to be actionable. *Smith v. Hubbard,* 253 Minn. 215, 91 N.W.2d 756, 764 (1958) (recognizing actionable battery on constable for being pushed by person subjected to arrest and then having shirt torn and badge broken, even though it was "undisputed that plaintiff suffered no real physical harm"). *See also Fisher v. Carrousel Motor Hotel, Inc.,* 424 S.W.2d 627, 629 (Tex.1967) ("Since the essence of the plaintiff's grievance consists in the offense to the dignity involved in the unpermitted and intentional invasion of the inviolability of his person and not in any physical harm done to his body, it is not necessary that the plaintiff's actual body be disturbed" to maintain a cause of action for battery).

■ For whatever reason, James Keenan's complaint, and even his current declaration for this case, are phrased in broad terms. He frames his accusations of Adamson's wrongdoing in abstractly legal language; however evocative they are in context, they are only conclusory. There is no allegation of specific physical violation that would have sundered body tissue, for instance, to match to the essence of a "bodily injury." His allegations of consequential harm focus entirely on the psychological dimension of his person. Such harms can be real, severe, and long-term consequences of sexual exploitation, particularly when the victim is a minor; and their existence can be neither denied nor demeaned. But the cold reality remains, as a matter of abstract logic, that they are not a "bodily injury" as commonly or legally defined.[11]

Thus, James Keenan's claims in suit against the institutions he would hold responsible for exposing him to Adamson's exploitation do not qualify as exempt under § 522(d)(11)(D). The Trustee's objection must be sustained.[12]

---

11. The court in *In re Ciotta,* 222 B.R. at 633–634, adopted this construction for state statutory language identical to that of § 522(d)(11)(D), and that case involved an underlying tort claim comparable to the one made out by the record at bar. The debtor-wife in *Ciotta* was the plaintiff in prepetition litigation against her employer, in which she asserted she had been sexually harassed while on the job. The debtor-wife alleged she had been physically touched by a direct supervisor, in an overtly sexual manner, involving a physical restraining but without allegation of physical penetration or other overt invasion of the body. The act of the offensive touching was the only act of physical contact pleaded to make out a claim of "personal bodily injury." Examining other courts' treatment of § 522(d)(11)(D) and state statutes with identical or comparable language, the *Ciotta* court concluded that the debtor-wife was required to "clearly demonstrate that she ha[d] suffered an appreciable physical injury," and that the allegations of the previously-described acts, without medical corroboration of "a tangible bodily injury" inflicted on her, was "insufficient and unable to satisfy the requirements of the exemption statute." *Id.*

12. It is a sad thing to have to reach this conclusion. With the understanding of modern-day psychology, no one could deny that the deep psychological injuries consequent to victimization by a sexual predator are as personal, and as causative of permanent loss, as the severing of a limb, broken bones, heavy scarring, or lasting impairment of bodily mobility or organ system functioning. And, under current statute and jurisprudence, injuries of this sort are actionable and compensable in tort, as against the perpetrator and others that caused or enabled the injuries. Thus, it seems fitting for the victim to retain the economic value of legal redress for such injuries, while going through an insolvency proceeding, rather than to lose it to his creditors. But, the law applicable to this case does not embody such a legislative recognition. This is most likely because it was enacted in 1978, at a time when the gravity of more intangible, psychological injury was only beginning to be recognized and to be made actionable under the law of tort. *E.g., Hubbard v. United Press Int'l,* 330 N.W.2d 428 (Minn.1983) (first recognition in Minnesota's common law, of freestanding tort of intentional infliction of emotional distress). *Cf. Krueger v. Henschke,* 210

IT IS THEREFORE ORDERED:

1. The Trustee's objection is sustained.

2. Debtor James Keenan's interest in an asset described as:

Personal injury claims against representatives of Catholic Church in Minnesota. In "John Doe" litigation in St. Paul

is not exempt under 11 U.S.C. § 522(d)(11)(D).

Minn. 307, 298 N.W. 44 (1941) (recognizing recoverability of damages for emotional distress *caused by* physical injury). It is risky at best to speculate on the specific contemplation of a Congress that was acting over three decades ago. Nonetheless, it is fair to observe that the framers of this exemption simply did not contemplate the sort of actionable claims for damages and the countervailing interests at bar, when it balanced the uniquely personal interests of debtors holding personal-injury tort claims against the financially-driven interests of their creditors in bankruptcy. Arguably, ensuing developments in non-bankruptcy law have made § 522(d)(11)(D) outdated, and this exemption provision should be considered for amendment. But, the parties to this case are relegated to the current text of the statute, which must be applied—and there is no leeway in it to accommodate a retention by James Keenan of the claim for damages. If it occurred as he alleges in his complaint, those responsible should be called to account to the fullest extent possible under nonbankruptcy substantive law. But the beneficiary of any extraction of monetary damages cannot be James Keenan, to any extent other than available to him under § 522(d)(5).