# STATE v. ROBERT F. DUREN.

123 N. W. (2d) 624.

August 23, 1963—No. 39,058.

*Schultz & Springer* and *Arnold E. Kempe,* for petitioner.

*Donald L. Lais,* Corporation Counsel, *Theodore J. Collins,* Prosecuting Attorney, and *Daniel A. Klas,* Assistant Prosecuting Attorney, for respondent.

*Keith M. Stidd,* City Attorney, and *Ronald H. Linman,* Assistant City Attorney, for City of Minneapolis, amicus curiae.

THOMAS GALLAGHER, JUSTICE.

Motion by the state to quash a writ of prohibition issued by this court on March 13, 1963, commanding the municipal court of the city of St. Paul, and the Honorable J. Clifford Janes, one of its judges, to refrain from proceeding herein until further order of this court; and to show cause why they should not be permanently restrained from proceeding herein.

The writ was issued upon a petition of defendant, Robert F. Duren, wherein he asserted that he had been unlawfully arrested and taken into custody by the police of St. Paul for the offense of driving a motor vehicle while under the influence of alcohol; and wherein he asserted that on February 15, 1963, he had appeared specially in the municipal court of St. Paul and objected to its jurisdiction to determine this action and moved for dismissal. Therein he set forth that with respect to the offense described no complaint had ever been signed by anyone and that no warrant for his arrest had ever been issued.

The record indicates that on February 10, 1963, at the intersection of Kellogg Boulevard and Summit Avenue in St. Paul, defendant was taken into custody by police officers of St. Paul pursuant to a "CERTIFICATE AND DECLARATION OF ARREST BY PRIVATE PERSON AND DELIVERY OF PERSON SO ARRESTED TO PEACE OFFICER" executed by Valdora Ellingson. This certificate was as follows:

"CERTIFICATE AND DECLARATION OF ARREST BY PRIVATE PERSON AND DELIVERY OF PERSON SO ARRESTED TO PEACE OFFICER
                    "Date Feb. 10, 1963
                    "Time 0255
                    "Place Kellogg & Summit
"I Valdora Ellingson, hereby declare and certify that I have arrested

"(Name) Robert Francis Duren

"(Address) 857 Albion

"For the following reasons: Driving while under the influence of intoxicating beverages and I do hereby request and demand that you David Hubenette A PEACE OFFICER, take and conduct this person whom I have arrested to the nearest magistrate, to be dealt with according to law; * * * at which time I shall be present and I will, then and there, sign under oath, the appropriate complaint against this person for the offense which this person has committed, and for which I made this arrest; and I will then and there, or thereafter, as soon as this criminal action or cause can be heard, testify under oath of, and concerning the facts and circumstances involved herein. * * *

"Name of person (private party)
making this arrest
"Valdora Ellingson
"Address 434 Herschel

"Peace Officer witness to this statement:

"David F. Hubenette 407

"Roy C. La Belle"

At about 2 a. m. that date Miss Ellingson was seated in a parked automobile on the east side of Kellogg Boulevard near Summit Avenue when an automobile driven by defendant turned off of Summit onto Kellogg and collided with the right side of the automobile in which she was seated. Thereafter she observed defendant leave his automobile and commence talking to a Mr. Holt, who had come out to the scene of the accident from his nearby residence. Five or ten minutes later, two St. Paul police officers—David F. Hubenette and Roy C. La Belle—arrived in a police car. At no time did defendant have any conversation with Miss Ellingson, who remained in her automobile, and she was unaware of the conversation which had taken place between defendant and the police officers. After the latter had arrived, defendant was instructed to get into their car and Miss Ellingson was requested to sign the CERTIFICATE AND DECLARATION OF ARREST above set forth, explaining to her that, since neither of them observed defendant while in the act of driving his automobile,

they were not qualified to arrest him for driving it while intoxicated. Miss Ellingson thereupon signed the certificate described.

Defendant was not shown the form which Miss Ellingson signed, but thereafter was promptly taken by the police to the St. Paul Public Safety Building under arrest. He was advised by the police officers that he had been arrested upon suspicion of driving his automobile while under the influence of intoxicants. It was stipulated by the parties that defendant's arrest was a citizen's arrest by Miss Ellingson and not by the police officers and no complaint was ever signed and no warrant was ever issued herein.

The record discloses that the following testimony was taken at a hearing on the motion to dismiss:

"Q. Did you [Valdora Ellingson] of your own vision see who was driving the car?

"A. I just seen Mr. Duren come out of the driver's side of the car. I didn't actually see him drive.

\* \* \* \* \*

"Q. How long from the time of the collision until the police came would it have been?

"A. Around five to ten minutes—not too long.

\* \* \* \* \*

"Q. Did you talk to Mr. Duren in that five or ten minute period?

"A. No.

"Q. You remained in your car?

"A. Yes.

\* \* \* \* \*

"Q. And did you, when the police came, did you tell them you had arrested this individual?

"A. No.

\* \* \* \* \*

"Q. \* \* \* Did the police officers ask you to sign this?

"A. Yes.

\* \* \* \* \*

"Q. You never talked to the defendant at all that night, did you?

"A. No.

"Q. You didn't walk over to him, touch him, or any contact whatever?

"A. No.

\*  \*  \*  \*  \*

"Q. What did the police officers tell you when they asked you to sign this form?

"A. He said that it appeared that he was intoxicated and he thought that I should sign the form, and the man he was with also told me that he was drunk and I should sign the form.

"Q. You didn't see him actually, did you?

"A. No, I didn't.

"Q. You didn't know if he was or wasn't, is that correct?

"A. Right.

"Q. Is this then correct, that based on what the police officers told you and other people, but not on your own knowledge—

"A. Right.

\*  \*  \*  \*  \*

"Q. Did the defendant get in your car at any time?

"A. No.

"Q. Of your own knowledge just then you—repeat it to make it clear—you have no opinion one way or the other as to whether the defendant was intoxicated or not?

"A. No.

\*  \*  \*  \*  \*

"Q. \* \* \* What was the reason you signed this form?

"A. They said since it was my car I should sign the form—it was my property.

"Q. \* \* \* When the cars collided, your car and the defendant's car, you didn't see him coming, did you?

"A. I didn't see him coming, no.

\*  \*  \*  \*  \*

"Q. \* \* \* Now, after the cars collided what, if anything, did you notice about the defendant's car?

"A. Well, after he hit me he went over to the other side of the road—the right side—and he parked and he waited a while and then he got out and he come and looked over at my car, and at that time the fellow that I was with came out of the apartment and he came over and started talking to him.

"Q. Now, the man you were with did not come out of the apartment until after the defendant had gotten out of his car, is that right?

"A. Well, he saw him pull over to the other side and then he was just coming—

\* \* \* \* \*

"Q. Which side of the car did the defendant get out of?

"A. The right—the driver's side, left side.

\* \* \* \* \*

"THE COURT: I have a question—I have a question to ask. You said you had no conversations with the defendant, I believe. Did the defendant, Mr. Duren, have any conversations with anyone else in your presence?

"THE WITNESS: Not in my presence, no. They were behind the car.

\* \* \* \* \*

"Q. Did you [Officer David F. Hubenette] have a conversation with him [defendant]?

"A. Yes, we talked to him immediately.

\* \* \* \* \*

"Q. Well, could you tell us what that conversation was at that time?

"A. We asked him if he had an accident and he stated he did.

"Q. Did you ask him if he had been driving a car?

"A. Yes.

"Q. And what did he say?

"A. He stated he had been.

\* \* \* \* \*

"Q. Did you notice anything about the demeanor of the defendant, Mr. Duren?

"A.  On our first arrival as he was standing in front of the squad car we could see that he was standing still and swaying, and also his eyes were very bloodshot.

"Q.  And what else did you notice about him?

"A.  Upon having conversation with Mr. Duren he, his breath smelled strongly of intoxicants and he had a slightly slurred speech.

\*     \*     \*     \*     \*

"Q.  And then what did you do?

"A.  We examined the damage from both cars and I talked to Miss Ellingson.

"Q.  And where was this conversation with Miss Ellingson?

"A.  It was in her car—she was seated on the right-hand side of her car.

"Q.  And what did you say to her?

"A.  I asked her if she would sign a citizen's arrest form.

\*     \*     \*     \*     \*

"Q.  Did you explain to her why you wanted her to sign a citizen's arrest?

"A.  Yes, I did.

"Q.  And what did you explain?

"A.  I explained that we did not see him driving, we did not see the accident, and we had no power of arrest—that was not committed in our presence, and that she would have to be the one that would make the arrest.

"Q.  And after talking to you did she consent to making an arrest?

"A.  Yes.

\*     \*     \*     \*     \*

"Q.  And based on your observation of Mr. Duren when you talked to him at the location, Kellogg and Summit, on the early morning of February 10th, and based upon your experience as a police officer, and of course considering your own private life, do you have an opinion as to whether or not Mr. Duren was under the influence of alcohol?

\*     \*     \*     \*     \*

"A.   Mr. Duren was under the influence in my opinion.

"Q.   In your opinion was Mr. Duren drunk?

"A.   Yes.

\*   \*   \*   \*   \*

"Q.   \* \* \* Did you talk to Miss Ellingson after you had seen and talked to the defendant, Duren?

"A.   Yes.

\*   \*   \*   \*   \*

"Q.   What did you tell her in that regard?

"A.   I told her that in my opinion he was apparently under the influence of intoxicants.

\*   \*   \*   \*   \*

"Q.   \* \* \* After talking to Miss Ellingson and after she had signed this State's Exhibit A, what did you do, if anything?

"A.   We informed Mr. Duren that he was under arrest for suspicion of driving while under the influence of intoxicants, and that we wanted to take him to Headquarters for a sobriety test.

\*   \*   \*   \*   \*

"Q.   Officer, was there any public offense attempted or committed in your presence for which you made an arrest of Robert Duren on February 11, 1963?

"A.   No.

\*   \*   \*   \*   \*

"Q.   Now, before signing or after signing that form \* \* \* did Miss Ellingson go over and inform Robert Duren that she was arresting him?

"A.   No.

\*   \*   \*   \*   \*

"Q.   \* \* \* Was there any public offense committed in your presence?

"A.   Yes.

"Q.   And what was that offense?

"A.   Mr. Duren was drunk.

\*   \*   \*   \*   \*

"Q. * * * You made no arrest of the defendant that day or at any time to the present for his being drunk, have you?

"A. No.

"Q. Nor did Officer LaBelle to your knowledge make any arrest for the defendant being drunk?

"A. He did not."

In denying defendant's motion to dismiss the proceedings for lack of jurisdiction, the court stated:

"* * * The question arises first as to whether this citizen had the authority to make the arrest, was the offense committed in her presence? The driving was in her presence; the status of the defendant as to sobriety existed in her presence. As far as knowledge of it by personal observation is concerned, she did not have that. It is clear under the testimony she did not have knowledge of that status which existed. The officers have testified as to that status and have testified as to the communication to the arresting citizen as to that status. Well, I know of no cases that provide any particular guidance to this court on that situation. * * *

* * * * *

"* * * Then we come to the next question—what is required to accomplish the execution of a citizen's arrest. Well, I quoted from the statutes a few moments ago preceding the presentation of counsel, and I think that these two statutes must necessarily be read together * * *. The officers were not present at the time the driving took place—the citizen who signed this paper in the officer's presence and in the area of and quite close to the defendant—well, does the citizen have to do every exact detail which must be required in accomplishing an arrest or may a citizen, in accomplishing an arrest, be assisted by the police officers. * * * that's a question that the courts have, as of yet, given this court no guidance so far as I know. Similarly, * * * even if this were of an instance of a non-valid arrest where there is another justification as basis for arrest of the offense committed in the officer's presence, does that grant jurisdiction in the case for the other offense. Well, it's clear from what the court

has said * * * that the court considers these questions doubtful. This court is charged with deciding the law of matters as they come before the court, and on that basis this court holds that this court does have jurisdiction by reason of a valid arrest for which the defendant is now before the court."

The applicable statutes here are Minn. St. 629.30,[1] 629.34,[2] 629.37,[3] 629.38,[4] and 629.39.[5] It is the state's contention that it was not essential to validity that Valdora Ellingson have the offense described actually committed in her presence and that the arrest was valid even though information as to the intoxication which was an

---

[1] § 629.30 provides in part: "Arrest * * * may be made:
"(1) By a peace officer under a warrant;
"(2) By a peace officer without a warrant;
"(3) By a private person."

[2] § 629.34 provides in part: "A peace officer may, without warrant, arrest a person:
"(1) For a public offense committed or attempted in his presence;
"(2) When the person arrested has committed a felony, although not in his presence;
"(3) When a felony has in fact been committed, and he has reasonable cause for believing the person arrested to have committed it."

[3] § 629.37 provides: "A private person may arrest another:
"(1) For a public offense committed or attempted in his presence;
"(2) When such person has committed a felony, although not in his presence; or
"(3) When a felony has in fact been committed, and he has reasonable cause for believing the person arrested to have committed it."

[4] § 629.38 provides in part: "Before making an arrest such private person shall inform the person to be arrested of the cause thereof and require him to submit, except when he is in the actual commission of the offense * * *."

[5] § 629.39 provides in part: "Every private person who shall have arrested another for the commission of a public offense shall, without unnecessary delay, take him before a magistrate or deliver him to a peace officer. If a person arrested shall escape or be rescued, the person from whose custody he has escaped may immediately pursue and retake him, at any time and in any place in the state, and for that purpose, after notice of his intention and refusal of admittance, may break open any outer or inner door or window of a dwelling house."

element of the offense was conveyed to her by the police officers.

■ The above statutes authorize an arrest by a private citizen without warrant for an attempt to commit or the actual commission of a misdemeanor in his presence. After such an arrest, the only statutory requirements are that the citizen making the arrest inform the person to be arrested of the reason therefor and thereafter deliver him promptly to a magistrate or peace officer.

It is clear from the record that after defendant's arrest by Miss Ellingson she in effect delivered him to the police officers present who already had him in custody and that shortly thereafter the latter, acting on her behalf, advised him of the reasons upon which she had based his arrest, indicative of compliance with the statutory requirements outlined. That such arrest was made by her at the request of the police officers who had arrived after the accident would not affect its validity if § 629.37 were followed.

■ This leaves for determination only the question whether a private citizen may arrest another without warrant for commission of a misdemeanor in his presence when part of the information essential to such arrest is gained, not from his sensory perception, but rather from statements made to him by another. The statutory provisions which authorize an arrest by a police officer without warrant for a misdemeanor, § 629.34, are identical to those authorizing an arrest by a private citizen, § 629.37. In either case it is clear that the acts constituting the offense shall have been committed or attempted "within the presence" of the person making the arrest. This requirement has been construed by this court on a number of occasions. Thus, in Hilla v. Jensen, 149 Minn. 58, 62, 182 N. W. 902, 903, it was stated:

"* * * mere belief that a person has committed or is committing a misdemeanor does not justify even a peace officer in his arrest without a warrant, if in fact no misdemeanor has been committed or attempted."

In State v. Pluth, 157 Minn. 145, 151, 195 N. W. 789, 791, the governing principles were set forth as follows:

"* * * It cannot be said that a criminal offense is committed in

the presence of an officer, unless the acts constituting the offense become known to him at the time they are committed through his sense of sight or through other senses. Although a person may actually be committing a criminal offense, it is not committed in the presence of an officer within the meaning of the statute, if the officer does not know it. * * *

"In the present case the officers saw defendant driving an automobile on the public highway and it in fact contained liquor, but they had no knowledge of that fact when they stopped to investigate. The record is utterly barren of evidence showing or tending to show that they believed, or had any cause to believe, that defendant was transporting liquor or committing any other offense at the time they accosted him. * * * the only ground for making the arrest was the information disclosed by the search. The search was made before the arrest and at a time when the officers had no authority to make an arrest."

The above rule was reaffirmed in Smith v. Hubbard, 253 Minn. 215, 221, 91 N. W. (2d) 756, 762, where the court stated:

"Clearly two elements must appear before an offense is committed in the presence of an officer: (1) He must become aware of the acts as a result of his *sensory perception,* and (2) he must infer that the acts constitute an offense." (Italics supplied.)

See, also, Pickett v. State, 99 Ga. 12, 25 S. E. 608; Roberson v. State, 43 Fla. 156, 29 So. 535, 52 L. R. A. 751; State v. Green, 251 N. C. 40, 110 S. E. (2d) 609.[6]

---

[6]In a case involving intoxication, an arrest without warrant was sustained where the arresting officer did not act upon his sensory perception but relied upon defendant's admission that at the time he had been drinking intoxicants. State v. Murphy, 4 N. J. Misc. 957, 134 A. 900. In other jurisdictions arrests have been upheld where information with respect to the commission of the offense has been partially gained from sensory perception and partially from information admitted by defendant. State v. Gulczynski, 32 Del. 120, 120 A. 88; Daisen v. United States (6 Cir.) 4 F. (2d) 382. California has adopted the rule that an officer may make an arrest without warrant for a misdemeanor where circumstances exist which would cause

As this court is firmly committed to the principles described, any modification of the statutory requirements embodied in § 629.37 must come from the legislature. Such requirements constitute a safeguard against the danger of depriving an innocent person of his freedom which is always present where an arrest is made for an offense not actually committed within the presence of the person making the arrest. Under the statutes of course the rule does not apply to felonies, presumably because of the greater danger to the public where a felon is at large.

■ In view of this court's adherence to the doctrines above set forth and in view of the undisputed facts here, we must hold that defendant's arrest was invalid. The record clearly discloses that Valdora Ellingson, the arresting citizen, was not aware that defendant was intoxicated at the time of the accident, or at the time of his arrest. There is nothing therein which would reasonably support a finding that before she made the arrest she had determined from her sensory perception that he was intoxicated. She admitted that she did not know that he was intoxicated. At no time after the accident was he in such close proximity to her that she could have determined from the odor of liquor upon him that he was intoxicated. While the sensory perceptions of the police officers present readily convinced them of defendant's intoxication, Miss Ellingson was not justified in relying upon their perceptions rather than her own in making the arrest.

Writ of prohibition made absolute.

---

a reasonable person to believe that a crime has been committed in the officer's presence, rejecting the argument that such rule applied only to felonies. Coverstone v. Davies, 38 Cal. (2d) 315, 239 P. (2d) 876, certiorari denied, sub nom. Mock v. Davies, 344 U. S. 840, 73 S. Ct. 50, 97 L. ed. 653; People v. Burgess, 170 Cal. App. (2d) 36, 338 P. (2d) 524, where the rule was applied to an arrest by a private citizen.