**UNITED STATES of America, Appellee,**

v.

**David James SLUPE, Appellant.**

**No. 82–1008.**

United States Court of Appeals, Eighth Circuit.

Submitted May 21, 1982.

Decided Nov. 23, 1982.

Rehearing and Rehearing En Banc Denied Dec. 22, 1982.

James M. Rosenbaum, U.S. Atty., James A. Morrow, Asst. U.S. Atty., D. of Minn., Minneapolis, Minn., Dwight L. Pringle, Legal Intern, for appellee.

Meshbesher, Singer & Spence, Ltd., Kenneth Meshbesher, Carol Grant, Minneapolis, Minn., for appellant.

Before LAY, Chief Judge, HEANEY, Circuit Judge, and BECKER,* Senior District Judge.

WILLIAM H. BECKER, Senior District Judge.

David James Slupe (appellant) appeals from a judgment of the District Court finding him guilty of the criminal offenses charged in three counts of an indictment as follows: possession on March 31, 1981, with intent to distribute, of approximately 195 grams of heroin (Count I); distribution on March 31, 1981, to Richard Dennis Ferguson at appellant's residence in Austin, Minnesota, of approximately 25 grams of heroin (Count II); conspiracy from about January 1, 1981, to about March 31, 1981, with Richard Dennis Ferguson, Frederick Wesley Gregg and Terrance Lee Kadlec, to distribute heroin (Count X).

---

* William H. Becker, Senior District Judge, Western District of Missouri, sitting by designation.

Appellant was not charged with the offenses in Counts III, IV, V, VI, VII, VIII and IX of the indictment, each of which charged the commission of an offense by one or more of the codefendants Richard Dennis Ferguson, Frederick Wesley Gregg, Dawn Marie Ferguson, Terrance Lee Kadlec and Elaine Francis Kadlec.

The convictions and sentences of appellant followed Findings of Fact, Conclusions of Law, and Verdict of the District Court entered following a plenary trial without a jury, based on formal waiver by appellant of trial by jury, and consent of the government in writing pursuant to Rule 23, F.R. Cr.P.

The sentences imposed on the appellant by the District Court were as follows: On Count I, to serve ten years imprisonment and a special parole term of three years; on Count II to serve ten years imprisonment and a special parole term of three years to run concurrently with the sentences on Count I; on Count X, to serve ten years imprisonment to run concurrently with the sentences on Counts I and II.

*Pretrial Proceedings Before Magistrate*

Before the trial in the District Court the appellant and the codefendants filed several pretrial motions, some of which are not material to this appeal. Appellant filed a pretrial motion to suppress all statements made by him to officers at the time and after he was arrested without an arrest warrant by Austin, Minnesota police officers at or about 11:55 p.m. on March 31, 1981. Appellant also filed a pretrial motion to suppress all evidence seized earlier from his garbage, and to suppress the evidence seized from his father's garage near appellant's residence, with appellant's oral consent and assistance.

Related relevant motions to suppress other evidence against them were filed by the codefendants of appellant. These motions are not material to this appeal.

All these pretrial motions to suppress, including those of appellant, were referred to United States Magistrate Floyd E. Boline for hearings, filing of reports and recommendations.

The Magistrate conducted hearings on motions of appellant and three codefendants on July 27, 1981, and conducted hearings on the motions of the two remaining codefendants on August 4 and August 26, 1981. All these hearings were on notice with opportunity of defendants to be heard in person and by counsel. After these plenary evidentiary hearings the Magistrate filed on September 24, 1981, a detailed, comprehensive joint Report and Recommendation of 43 pages containing recommended findings of fact and conclusions of law separately stated with respect to the motions of the individual defendants. The Magistrate recommended in his findings and conclusions that each motion be denied. Appellant timely objected to the recommendations of the Magistrate that his pretrial motions be denied.

The evidence before the Magistrate included oral testimony of Minneapolis police officers, a federal drug enforcement officer, the appellant, and a witness called by appellant. Also admitted in evidence before the Magistrate were the search warrants and affidavit on which the search warrants in question were issued.

Thereafter, on September 29, 1981, the District Court heard the timely objections of the appellant to the Report and Recommendation of the Magistrate and made a *de novo* determination agreeing with and adopting the findings and conclusions of the Report and Recommendation of the Magistrate that the pretrial motions to suppress be denied.

*The Report of the Magistrate*

The Report and Recommendation of the Magistrate set forth numerous findings of fact and conclusions of law concerning the actions, arrests of, and seizures of evidence from the codefendants alleged to have conspired with the appellant. With respect to the motions of the appellant, the Magistrate in his Report and Recommendation, later adopted by the District Court, made additional findings and conclusions which are summarized as follows.

In the findings of fact the Magistrate found, on substantial evidence, among other things, that a confidential reliable informant advised police officer Brademan of Minneapolis, Minnesota that on March 19, 1981, Kadlec (a coconspirator with Slupe) would go to southern Minnesota to pick up heroin; that Kadlec did get into a Piper aircraft, No. N 4553A, registered to Slupe, at the Owatonna, Minnesota airport with two other persons, and after a short flight and return to the airport the two persons took off and flew to Austin, Minnesota, landed and drove to the home of coconspirator Gregg; that criminal intelligence files indicated that Slupe was involved in the illegal importation of heroin and cocaine into the United States by air; that the next day the informant advised the police officer that Kadlec had obtained heroin in southern Minnesota and would be distributing it in the Minneapolis metropolitan area; that on March 20, 1981, police officer Hines of Austin, Minnesota advised officer Brademan that in late 1972 and early 1973 Slupe and Roger Lewis had transported marijuana into Dodge County, Minnesota by air; that Lewis had rented a plane four times in the period, and on one occasion returned a plane with marijuana debris inside; that Slupe had been spending a great deal of money in the Austin area in the last six months, and had shown a handgun which he said was for Lewis who was out of the country; and that federal criminal intelligence files indicated that Lewis was involved in smuggling marijuana and cocaine into the United States by plane, and that Lewis was an associate of Slupe.

From the testimony at the hearing the Magistrate further found that officer Hines found in the garbage picked up from Slupe's residence a clear piece of plastic with a powder residue giving a positive reaction for opium; that on March 31, 1981, at about 11:45 p.m., Slupe left his residence and drove to the home of his parents in Austin; that at about 11:55 p.m. Slupe ran from the garage of his parents' home to his car; that it was not raining and no lights were on in the garage or the home of his parents; that Slupe then drove toward Main Street of Austin where at about 11:55 p.m. he was taken into custody for execution of search warrants for his person and residence, which had been issued but had not yet arrived in Austin; that Slupe was driven to his residence; that Slupe was advised fully within five minutes of his *Miranda* rights which he stated he understood; that Slupe was not under the influence of drugs or alcohol; that Slupe at no time asked for an attorney; that Slupe was kept in a government vehicle until sometime after midnight when the search warrants arrived before which only a "pat down" search of his person was performed; that the warrant for search of Slupe's person was then executed, but no illegal drugs were found; that DEA Agent Doman and other officers executed the warrant for the search of Slupe's residence where Slupe and Captain Bjergo were found in the northeast bedroom; that Doman verified from Slupe that Slupe had been advised of his rights and that Slupe understood them; that Doman saw a slip for gasoline for the Piper aircraft; that Doman again advised Slupe of his rights and told Slupe he could contact an attorney, and if he could not afford one an attorney would be obtained for him; that Slupe did not ask for a lawyer or to use a telephone; that Slupe admitted that he was part owner of the Piper plane, but that Ferguson had taken over one-half of the payments; that no drugs were found in Slupe's house; that Captain Bjergo came into the bedroom and said that a warrant for the search of the home of Slupe's parents would be obtained; that upon hearing this Slupe became visibly nervous and white faced; that Slupe said his father had recently had heart surgery and that a warrant would be hard on him; that Slupe was told the officers would cause as little confusion as possible if a search warrant was obtained; that Slupe asked Doman if he would like to have a favor done for him and said he would do such a favor if his father's house was not searched; that Doman again told Slupe he could talk to a lawyer; that Slupe did not ask for a lawyer; that Slupe told Doman he would show Doman where

his "stash" was, but that Doman and only one officer could accompany him; that this was at 1:30 a.m. on April 1, 1981, and Slupe was alert, not under the influence of drugs or alcohol, and no illegal threats or promises were made to him; that Slupe took agents Doman and Braseth to his father's garage and showed them a box on the rafters containing heroin, marijuana residue, $15,800 in cash, a scale, and a check for $750; and that some firearms and paraphernalia for taking cocaine were seized from Slupe's residence.

The Magistrate further found that a piece of plastic with white opiate powder was found on March 25, 1981, in the garbage picked up from Slupe's residence.

The Magistrate found that, from the totality of all reliable information known to the officers, the warrantless arrest of Slupe was made with probable cause at 11:55 p.m. on March 31, 1981; that the arrest of Slupe was made four hours after Slupe's codefendants had been arrested, were known to have been engaged in drug traffic, and had been given an opportunity to call Slupe while they were in custody; and that the arrest was after Slupe had been seen running in the dark from the garage of his parents' home which was without lights.

The Magistrate further found that the consent to search the garage of the house of Slupe's father was freely, intelligently and voluntarily given with full knowledge by Slupe of his rights; that probable cause existed for issuance of the search warrants for the person and residence of Slupe; and that the search warrants were legally initially executed by state officers, though addressed to "Jerry Kramer, Drug Enforcement Administration, or any other authorized representative."

The Magistrate further found that there were no wiretaps or evidence of wiretaps.

### Contentions of Appellant on Appeal

Appellant makes the following contentions on appeal:

I. The fruits of defendant's arrest must be suppressed from evidence, where arresting officers merely guessed that defendant associated with narcotics dealers, and saw defendant running in the rain, because the latter observation is completely consistent with innocence and because "mere association" with wrongdoers can never create probable cause to believe that a person is a criminal.

II. The fruits of a search pursuant to warrant must be suppressed, where the warrant issued because of defendant's mere association with suspected narcotics distributors, because he had been seen running in the rain, and because a policeman speculated that there was heroin on a piece of plastic in a garbage truck where defendant's and others' garbage was thrown.

III. The fruits of a consent to search must be suppressed from evidence, when it was the product of a threat to execute a warrant which didn't exist and could not have been obtained; a threat to the health of defendant's father; a threat to demolish defendant's house with jackhammers; and an arrest, strip-search and residence search made without probable cause.

IV. The fruits of interrogation must be suppressed, where it was commenced after police twice ignored defendant's assertion of the right to counsel, and where the *Miranda* warnings were not read immediately before the commencement of interrogation.

We find no error in the findings and conclusions of the District Court or of the United States Magistrate reviewed *de novo* and adopted by the District Court after consideration of the objections to the Report and Recommendation of the Magistrate. The judgment of convictions of appellant and the sentences are affirmed. Discussion of the contentions on this appeal of appellant follow.

## I.

■ The arrest of appellant without a warrant of arrest at about 11:55 p.m. near his home was supported by probable cause under federal standards as found by the Magistrate. *United States v. Watson,* 423 U.S. 411, 96 S.Ct. 820, 46 L.Ed.2d 598 (1976). Further, the arrest was authorized by the Minnesota statute M.S.A. § 629.34 which validly provided in part:

A peace officer may, without warrant ·arrest a person:

\*        \*        \*        \*        \*        \*

(3) When a felony has in fact been committed, and he has reasonable cause for believing the person arrested to have committed it.

■ In determining whether probable cause existed to make a warrantless arrest a court will consider whether the totality of facts and circumstances based on reasonably trustworthy information would justify a prudent person in believing the person arrested had committed or was committing a crime at the time of his arrest. *United States v. Miller* (C.A. 8 1979) 608 F.2d 289 at 291, and cases therein cited. The contention of appellant ignores the facts known to the arresting officers from trustworthy information and their observations that night. *United States v. Regan* (C.A. 8 1975) 525 F.2d 1151 at 1154. The observation of the furtive actions and running in the night from the garage of the house of appellant's parents was significant in the light of all other trustworthy information known to the arresting officers. *Sibron v. New York,* 392 U.S. 40 at 66–67, 88 S.Ct. 1889, 1904, 20 L.Ed.2d 917 (1968). Since the arrest of appellant was lawful suppression of the "fruits of the arrest", if any, was properly denied.

## II.

■ The warrant for the search of the residence of appellant was issued on an affidavit of DEA Officer Kramer showing probable cause. The findings of fact and conclusions of law of the Magistrate adopted after *de novo* review by the District Court amply support the finding of probable cause required for validity of the search warrant for the residence of appellant.

## III.

■ The critical evidence against appellant was secured by the officers from the garage of the house of the father of appellant at the instance, and with the assistance of appellant, after the officers expressed an intention to secure a warrant for search of the house of the father of appellant. The District Court did not err in refusing to suppress, and in admitting, this critical evidence.

It is true that appellant was in custody and under arrest at this time. The evidence of the officers supported the finding that appellant's actions in disclosing the existence of this evidence and producing it was clearly voluntary. Further, the testimony of appellant before the Magistrate, with some minor reservations, corroborates the finding of the District Court that appellant voluntarily, knowingly and without coercion consented to the search. (Transcript of Magistrate Court Proceedings, 169–171, 174–177). In this testimony the defendant made it clear that he admitted that during the actions leading up to the search with his consent and assistance, his actions were voluntary and knowing, affected only by the apprehension that a search warrant for his father's house might be obtained.

Assuming that the government bears a heavy burden to prove that a consent to a search by a person under arrest or detention is voluntary, nevertheless the evidence before the Magistrate and the District Court fully meets this burden, and supports the finding of the District Court. Davis, *Federal Searches and Seizures,* Sections 4.31 and 4.311. On the varying views of the lesser degrees of proof required to prove voluntariness of consent of one under arrest see 1 Ringel, *Searches & Seizures, Arrests and Confessions,* § 9.6 and cases therein discussed; 68 Am.Jur.2d, *Searches and Seizures,* § 48.

The original arrest of the appellant on the night of March 31, 1982, was lawful for

two reasons. First, an arrest to execute the warrant for the search of the person of appellant was lawful. Detention for this purpose was lawful only for a reasonable time when the search of the person produced no evidence of a criminal activity. Second, after appellant earlier was seen running in the dark from the garage of his parents' unlighted residence while it was not raining, and after the alleged co-conspirators had been arrested during a transaction distributing heroin apparently supplied, directly or indirectly, by appellant, and an affidavit of DEA Officer Kramer had been submitted, and the search warrants for the person and house of appellant issued thereon, the totality of the facts known to the officers constituted probable cause for the arrest of the appellant, without a warrant, for criminal activity. Detention after this arrest was not limited until release on bail.

Furthermore, the issuance upon probable cause of the warrant for the search of the person of appellant, did not violate federal constitutional standards. In fact, the issuance of a federal warrant by a federal magistrate or state judge, for the search of a person, is expressly authorized by Rule 41, Federal Rules of Criminal Procedure. The arrest of appellant for the purpose of executing the warrant for search of his person was lawful. *United States v. Baca* (C.A. 10 1973), 480 F.2d 199, *cert. denied,* 414 U.S. 1008, 94 S.Ct. 370, 38 L.Ed.2d 246 (1973); *People v. Wilson,* 256 Cal.App.2d 411, 64 Cal.Rptr. 172 (1967), *cert. denied,* 391 U.S. 903, 88 S.Ct. 1653, 20 L.Ed.2d 418 (1968). *Cf.* 1 Ringel *Searches & Seizures, Arrests and Confessions* § 6.7; 68 Am.Jur.2d, *Searches and Seizures,* § 107; 1 Wharton, *Criminal Procedure* § 167; Annotation, 49 A.L.R.2d 1209.

As quoted with approval in *People v. Wilson, supra,* 256 Cal.App.2d 411, 64 Cal. Rptr. 172 at 176 (1967), from *People v. Aguilar,* 240 Cal.App.2d 502, 49 Cal.Rptr. 584 at 585 (1966):

> Since it is an obvious impossibility to search the person of an individual without first taking him into custody, the warrant impliedly authorized an arrest as a step in the authorized search.

## IV.

The final contention on appeal is without factual basis, for the findings of fact of the Magistrate, and of the District Court, amply supported by the evidence, are contrary to the factual assertions of appellant.

### *Conclusion*

For the foregoing reasons, the findings of guilt, and sentences of appellant on Counts I, II and X are hereby affirmed.