**UNITED STATES of America, Appellee,**

v.

**Douglas Edward RAMBO, Appellant.**

**No. 84–5160.**

United States Court of Appeals, Eighth Circuit.

Submitted Oct. 16, 1985.

Decided April 25, 1986.

Rehearing and Rehearing En Banc Denied June 17, 1986.

█

---

Deborah Ellis, St. Paul, Minn., for appellant.

Paul A. Murphy, Asst. U.S. Atty., Minneapolis, Minn., for appellee.

Before JOHN R. GIBSON and FAGG, Circuit Judges, BRIGHT, Senior Circuit Judge.

JOHN R. GIBSON, Circuit Judge.

Douglas Edward Rambo appeals from his conviction following a jury trial of one count of conspiracy to possess and distribute cocaine, three counts of possession with intent to distribute cocaine, and one count of distribution of cocaine, in violation of 21 U.S.C. §§ 841(a)(1), 846 (1982), and 18 U.S.C. § 2 (1982). Rambo argues on appeal that his warrantless arrest by police officers in his hotel room for a misdemeanor offense was unlawful, and, as a consequence, a subsequent search of his possessions and hotel room, which yielded substantial quantities of cocaine, violated the fourth and fourteenth amendments. Thus, Rambo contends, the district court erred in not suppressing evidence of the cocaine seized by the police officers. We affirm the judgment of the district court.[1]

On September 23, 1983, a security officer of the Curtis Hotel in Minneapolis was called to the seventh floor of the hotel to investigate complaints that a guest was running naked through the halls, screaming. As the security officer arrived on the seventh floor, he heard a man screaming inside room 769, which, it was later determined, had been rented by appellant. Although the security officer found it difficult to understand what the man was screaming, "because * * * it sounded like he was a gospel preacher," he was able to divine that it was "[s]omething to the effect that he was wondering if we could see him * * *." Transcript of Motions Before Magistrate at 10, *United States v. Rambo*, No. Cr. 4-84-1 (D.Minn. June 1, 1984) (Cudd, Mag.) The security officer called the assistant manager and together they knocked on appellant's door. Rambo answered in the nude, dripping wet, and stepped into the hall. The security officer testified at the suppression hearing that Rambo was very agitated and tense, and

1. The Honorable Harry T. MacLaughlin, United States District Judge for the District of Minnesota.

had two black eyes and a black bruise between his eyes on his forehead. Tr. at 14–15. The assistant manager asked Rambo why he was making so much noise, and what his problem was. Rambo replied that he had no problem and shut the door in the manager's face. The manager instructed the security officer to call the police to have the appellant removed from the hotel.

Minneapolis police officers Ramerth and Tucker arrived at the hotel. The assistant manager recounted to the officers the complaints registered by hotel guests, the report of the hotel security officer, and the actions of the appellant in response to his inquiry. The officers explained that they could remove the appellant only by arresting him, and suggested, from the information the manager had provided, that the appellant could be arrested for disorderly conduct, a misdemeanor offense under Minnesota law. Since state law authorizes police officers to arrest an individual for a misdemeanor without a warrant only for offenses committed in their presence, the officers informed the manager that he must sign a citizen's complaint form, in effect arresting the appellant for a misdemeanor committed in *his* presence. The assistant manager agreed to sign the form, and the police then knocked on the appellant's door. The officers testified at the suppression hearing that they intended to arrest the appellant before they knocked on the door. Tr. at 34. Neither the assistant manager, nor any of the hotel staff, ever signed a citizen's arrest complaint.

Rambo again answered the door in the nude. The officers described Rambo as "agitated," "tense," and "wild-looking," and both observed his black eyes and the bruise on his forehead. Tr. at 35, 68. The officers explained to Rambo that the manager wanted him out of the hotel because of the disturbance he had been creating. Rambo said that he would not leave, and tried to slam shut the door, which the officers prevented by putting their feet inside the threshold. As Rambo backed away inside the room, one of the officers

grabbed his wrist to restrain him. Rambo broke free and, according to the officers, moved quickly toward an open closet near the door. The officers then attempted to subdue him. After a struggle, the officers managed to handcuff Rambo, and advised him that he was under arrest. The officers then forcibly put a pair of trousers on him. Officer Tucker asked Rambo repeatedly for some identification. Finally, Rambo replied that it was in his baggage. Officer Tucker searched through a garment bag which he observed hanging in the closet, and discovered two "wads" of currency and some clothes, but no identification. When Officer Tucker announced this fact to his partner, Rambo volunteered that his identification must be in his other luggage, a travel bag which was resting on a table in the room. The bag had four separate compartments, all but one of which were padlocked. Officer Tucker searched the open compartment, but found no identification. Officer Ramerth asked Rambo where the key to the locked compartments was, and Rambo answered that the key was in his pants pocket. Officer Ramerth retrieved the key and gave it to Officer Tucker. Upon opening the compartments, Officer Tucker found a large plastic bag containing a white powder and additional sums of currency. The officers then advised Rambo of his *Miranda* rights. Rambo indicated he understood these rights, and provided the officers with a false name. Officer Tucker again searched Rambo's garment bag, and turned up various forms of identification, some with different names, including a Bolivian passport. The officers then searched the remaining portions of the room to inventory Rambo's belongings. During the course of this search, the officers found a small plastic bag of white powder under the mattress. Approximately ten ounces of ninety to ninety-four percent pure cocaine and $29,814 was seized.

Appellant's motion to suppress the evidence discovered during the search of his luggage and hotel room as the fruit of an illegal arrest and/or improper search was

heard by a federal magistrate,[2] whose findings and conclusions were adopted by the district court. *United States v. Rambo,* Cr. 4–84–1, slip op. at 2 (D.Minn. June 21, 1984). Rambo argued before the magistrate that his arrest was not carried out according to the state's citizen's arrest statute, and was therefore illegal, as was the search of his belongings and hotel room. The magistrate rejected Rambo's argument that his arrest was illegal under state law. He also concluded that Rambo had validly consented to the search of his luggage. The magistrate found that, although under the influence of a drug, Rambo was not cowed by authority, and directed the police to his luggage when they requested that he produce identification, "implicitly authorizing them to examine the contents." *United States v. Rambo,* No. CR 4–84–3, slip op. at 5 (D.Minn. June 14, 1984) (Report and Recommendation of Magistrate) [Magistrate's Report]. The magistrate also concluded that the search could be sustained as a search incident to arrest or, in the alternative, as a valid inventory search to protect the appellant's possessions.

## I.

Although Rambo ultimately was charged and convicted only on federal narcotics charges, the officers entered his hotel room to arrest him, and did in fact arrest him, for disorderly conduct, a misdemeanor offense under Minnesota law. *See* Minn. Stat.Ann. § 609.72 (West Supp.1985).[3] Thus, he properly points out, the validity of his arrest, the subsequent search of the hotel room, and his conviction on the present indictment rest on the propriety of the officers' warrantless entry into his hotel room to arrest him for a misdemeanor. Rambo attacks the legality of the entry on two independent grounds. First, the police officers had no authority under Minnesota law to arrest him without a warrant under these circumstances. Second, even if the entry and arrest were authorized by state law, a warrantless arrest in a place of residence for a misdemeanor offense under these circumstances violates the fourth amendment. We consider each contention in turn.

### A.

The validity of a warrantless arrest by a state officer is an issue governed in the first instance by state law. *Johnson v. United States,* 333 U.S. 10, 15 n. 5, 68 S.Ct. 367, 369–70 n. 5, 92 L.Ed. 436 (1948). Minnesota law authorizes a police officer to make a warrantless arrest for a misdemeanor only if the offense was "committed or attempted in his presence * * *." Minn. Stat.Ann. § 629.34 (West Supp.1985).[4] Minnesota law also authorizes private persons to arrest an individual without a warrant for a misdemeanor if the offense was committed or attempted in their presence.[5]

---

**2.** The Honorable J. Earl Cudd, Magistrate for the United States District Court for the District of Minnesota.

**3.** Section 609.72 provides, in relevant part:

Subdivision 1. Whoever does any of the following in a public or private place, knowing, or having reasonable grounds to know that it will, or will tend to, alarm, anger or disturb others or provoke an assault or breach of the peace, is guilty of disorderly conduct which is a misdemeanor.

    \*    \*    \*    \*    \*    \*

(3) Engages in * * * boisterous and noisy conduct tending reasonably to arouse alarm, anger, or resentment in others.

**4.** Section 629.34 authorizes a police officer to arrest a person without a warrant "for a public offense" committed in his presence. The term

"public offense" has been construed to embrace petty misdemeanors. *Smith v. Hubbard,* 253 Minn. 215, 220, 91 N.W.2d 756, 761 (1958); *State v. Sellers,* 350 N.W.2d 460, 462 (Minn.App. 1984). The requirement that the offense be committed in the officers' presence is subject to limited exceptions, none of which is relevant here. *See* Minn.Stat.Ann. § 629.341 (West Supp.1985) (domestic violence); Minn.Stat.Ann. § 169.121 (West Supp.1985) (driving while under the influence).

**5.** *See supra* note 4. Police officers are authorized to take custody of an individual arrested by a private person, Minn.Stat.Ann. § 629.39 (West Supp.1985), which means in practice that police officers often are the ones who actually effect the arrest, acting on behalf of the citizen-complainant. *See State v. Duren,* 266 Minn. 335, 345, 123 N.W.2d 624, 631 (1963).

Minn.Stat.Ann. § 629.37 (West 1983). For an offense to be "committed" in the presence of the police officer or private citizen, all the acts constituting the misdemeanor must have occurred in their presence. *See State v. Duren,* 266 Minn. 335 at 345–47, 123 N.W.2d 624 at 631–32; *Able v. Commissioner of Public Safety,* 352 N.W.2d 518, 520 (Minn.App.1984).

Given this limited statutory authority, Rambo argues, the police officers had no authority to arrest him. The police were without authority to arrest him on the basis of their own observations, Rambo contends, because his acts constituting disorderly conduct—running naked through the hall and screaming—were neither committed nor attempted in the officers' presence.[6] Similarly, Rambo asserts, the police had no authority to take him into custody pursuant to an arrest by a private party because the hotel manager's purported citizen's arrest was fatally flawed: he did not observe first-hand Rambo's disorderly conduct, and therefore had no authority to make a citizen's arrest, and, furthermore, he never signed the citizen's arrest complaint form.

██ Assuming Rambo is correct that the officers' entry into his hotel room cannot be sustained as the first step toward an arrest for disorderly conduct, the officers nonetheless were justified in entering Rambo's room to arrest him for violation of the state undesirable guest statute, Minn.Stat. Ann. § 327.73 (West Supp.1986). This statute provides that "an innkeeper may remove or cause to be removed from a hotel a guest * * * who acts in a disorderly manner * * * or causes a public disturbance." *Id.* subd. A guest who has engaged in such conduct and refuses to leave is guilty of a misdemeanor. *Id.* subd. 3. Given Rambo's conduct, the manager clearly was justified in requesting that he leave the hotel. The officers informed Rambo of the manager's request, and he unequivocably refused. The officers were therefore

justified in concluding that a misdemeanor had been committed in their presence.

██ Rambo points out that the police officers testified at the suppression hearing that they fully intended to arrest him for disorderly conduct *before* he answered the door. Tr. at 34. Thus, he argues, he was actually arrested for disorderly conduct, which was improper under the circumstances, and the impropriety cannot be cured by finding charges after the fact which would have supported his arrest at the time. Granting Rambo his premise, we reject his conclusion. Where a defendant is arrested for the wrong offense, the arrest is still valid if probable cause existed to arrest the defendant for a closely related offense. *United States v. Bonds,* 422 F.2d 660, 664 (8th Cir.1970); *accord Mills v. Wainwright,* 415 F.2d 787, 790 (5th Cir.1969). It is immaterial that at the time of the entry and arrest the officers did not have in mind the specific charge upon which the arrest can be justified; the offenses need only be closely related, and probable cause to arrest the defendant on the appropriate charge must have been present at the time. *Bonds,* 422 F.2d at 664; *see also Trejo v. Perez,* 693 F.2d 482, 485–86 (5th Cir.1982).

██ It is clear that the two charges here are closely related. The undesirable guest statute is merely a place-specific application of the disorderly conduct offense. The decision to arrest Rambo for disorderly conduct was based in part on reports that he had been running through the hotel hallway naked and screaming, conduct which would tend to "alarm, anger or disturb others," § 609.72. This same conduct supported the manager's lawful request to Rambo to leave. § 373.73 subd. 1. Additionally, there is no doubt that the officers had probable cause at the time to arrest Rambo for violating the undesirable guest statute.

██ We note, moreover, that even though the police officers conceded their intention to arrest Rambo for disorderly

---

**6.** Rambo does not dispute the fact that this conduct constitutes disorderly conduct within

the meaning of the Minnesota statute. *See* § 609.72.

conduct before he opened the door, his conduct and appearance after he answered the door gave the officers further justification for their actions. Rambo's manner and appearance gave the officers reasonable grounds to conclude that not only would he continue to engage in conduct similar to that which gave rise to the initial complaint, but he presented a real danger to himself. Thus, the officers were justified in taking the steps which led directly to the struggle with Rambo. *Cf. Mann v. Cannon,* 731 F.2d 54, 59 (1st Cir.1984) (scope of exigent circumstances exception for health and safety reasons). At that point, with Rambo's resistence, probable cause to arrest certainly existed.

██ Rambo's final state law contention is that the officers were not justified in forcing their way into the hotel room to arrest him. Under Minnesota law, a police officer in the course of making a warrantless arrest "may break open an outer or inner door or window of a dwelling house if, after notice of his office and purpose, he shall be refused admittance." § 629.34. Preventing the door from closing and entering certainly constitutes a "breaking" under the statute. *Cf. State v. Clark,* 312 Minn. 44, 50, 250 N.W.2d 199, 203 (1977) (entrance to apartment by passkey constitutes breaking under statute). However, the failure of the officers to give Rambo "notice of * * * office and purpose" before forcibly entering his hotel room is excusable in these circumstances. Police officers need not comply with the "strict requirements" of the knock and announce rule where they are reasonably certain that it would be a "useless gesture or senseless ceremony." *Id.* at 50, 250 N.W.2d at 203 (citing *Miller v. United States,* 357 U.S. 301, 310, 78 S.Ct. 1190, 1196, 2 L.Ed.2d 1332 (1958)). *See also State v. Lohnes,* 344 N.W.2d 605, 612-13 (Minn.1984). The police knocked and announced their presence; they informed Rambo that the manager wanted him out of the hotel and that he would have to leave. Tr. at 36, 69. Rambo resisted and attempted to slam the door. Rambo was clearly apprised of the officers' purpose, and had unequivocally refused

admittance. The officers were not required to follow otherwise important procedural dictates when compliance would be an arid formality.

**B.**

Rambo argues, in the alternative, that even if we conclude that the officers' entry and arrest was authorized by state law, their actions, under these circumstances, violated the fourth amendment. Specifically, Rambo contends, a warrantless arrest in a dwelling place, such as a hotel room, is permitted only under exigent circumstances, which Rambo contends were not present here. Moreover, he argues, the Supreme Court's recent decision in *Welsh v. Wisconsin,* 466 U.S. 740, 104 S.Ct. 2091, 80 L.Ed.2d 732 (1984), suggests that where the suspected offense is only a minor misdemeanor, as he asserts disorderly conduct is, warrantless entry to arrest is prohibited as a matter of law, regardless of the presence of any exigent circumstances.

██ We do not doubt that the protections against warrantless intrusions into the home announced in *Payton v. New York,* 445 U.S. 573, 100 S.Ct. 1371, 63 L.Ed.2d 639 (1980), apply with equal force to a properly rented hotel room during the rental period. *See United States v. Morales,* 737 F.2d 761, 764 (8th Cir.1984); *see also United States v. Baldacchino,* 762 F.2d 170, 175-76 (1st Cir.1985); *United States v. Bulman,* 667 F.2d 1374 (11th Cir.), *cert. denied,* 456 U.S. 1010, 102 S.Ct. 2305, 73 L.Ed.2d 1307 (1982); 2 W. LaFave, *Search and Seizure* § 6.1, at 157 (Supp. 1986). In the present case, however, Rambo was asked to leave the hotel by the officers, acting at the request of and on behalf of the hotel manager, because of his disorderly behavior. Magistrate's Report at 1-2. Thus, Rambo was justifiably ejected from the hotel under Minnesota law, *see* § 327.73 subd. 1, and the rental period therefore had terminated. *See United States v. Haddad,* 558 F.2d 968, 975 (9th Cir.1977). At that time, control over the

hotel room reverted to the management.[7] Rambo no longer had a reasonable expectation of privacy in the hotel room, and therefore is now without standing to contest the officers' entry (search) into the hotel room. *United States v. Clifford,* 664 F.2d 1090, 1092 (8th Cir.1981); *accord United States v. Underwood,* 717 F.2d 482, 484 (9th Cir. 1983), *cert. denied,* 465 U.S. 1036, 104 S.Ct. 1309, 79 L.Ed.2d 707 (1984); *United States v. Robinson,* 698 F.2d 448, 454 (D.C.Cir. 1983). Rambo cannot assert an expectation of being free from police intrusion upon his solitude and privacy in a place from which he has been justifiably expelled.

## II.

■ Rambo also argues that regardless of the officers' authority to enter his hotel room and arrest him, their subsequent search of his belongings and the hotel room violated the fourth amendment, and the evidence of the cocaine and currency must be suppressed. The magistrate held that Rambo had validly consented to the search, and, in the alternative, that the search was justified as incident to arrest or an inventory search, and the items seized were thus admissible.

For the same reason which led us to conclude that Rambo has no standing to challenge the officer's entry to arrest, he has no standing to challenge the seizure of the small bag of cocaine which was discovered by the officers under the mattress during their search.[8] *See Rawlings v. Kentucky,* 448 U.S. 98, 104–05, 100 S.Ct.

2556, 2561–62, 65 L.Ed.2d 633 (1980). *Cf. United States v. Lee,* 700 F.2d 424, 426 (10th Cir.), *cert. denied,* 462 U.S. 1122, 103 S.Ct. 3094, 77 L.Ed.2d 1353 (1983) (evidence discovered in motel under bed during search consented to by manager after rental period elapsed admissible as defendant had no reasonable expectation of privacy in area). Whether Rambo has standing to challenge the officers' search of his locked luggage raises a more difficult question. *Cf. Donovan v. A.A. Beiro Construction Co., Inc.,* 746 F.2d 894, 901–902 (D.C.Cir. 1984) (search conducted pursuant to consent of third party does not include areas or objects in which absent owner has manifested high expectation of privacy); *Lee,* 700 F.2d at 426 (same); *United States v. Block,* 590 F.2d 535, 541 (4th Cir.1978) (same). However, we need not address this question for we find that Rambo validly consented to the search of this luggage.

■ An individual may validly consent to an otherwise impermissible search if, in the totality of circumstances, consent is freely and voluntarily given, and not the product of implicit or explicit coercion. *Schneckloth v. Bustamonte,* 412 U.S. 218, 226–27, 93 S.Ct. 2041, 2047–48, 36 L.Ed.2d 854 (1973); *United States v. Dennis,* 625 F.2d 782, 793 (8th Cir.1980). Although the fact of custody, alone, does not render consent involuntary, the government bears a heavy burden of proving that consent granted by an individual under arrest was not the product of coercion. *United States v. Slupe,* 692 F.2d 1183, 1188 (8th Cir.1982).

**7.** When the rental period expires and control reverts to the hotel management, a hotel employee may consent to a room search by police. *See United States v. Larson,* 760 F.2d 852, 854–55 (8th Cir.), *cert. denied,* — U.S. —, 106 S.Ct. 143, 88 L.Ed.2d 119 (1985); *United States v. Jackson,* 585 F.2d 653, 658 (4th Cir.1978); *United States v. Parizo,* 514 F.2d 52, 54–55 (2d Cir. 1975). The government does not contend that the manager consented to a search of the hotel room after he ejected Rambo, nor is there any evidence in the record to support such a contention.

**8.** We need not consider, therefore, whether the search and seizure of this evidence can be justified on the alternative grounds suggested by the

magistrate. *But see United States v. Lyons,* 706 F.2d 321, 331–35 (D.C.Cir.1983) (inventory search exception does not permit officers to inventory all of defendant's possessions in hotel room for safekeeping). We note, moreover, that it would be difficult for us to intelligently review the magistrate's conclusion that the search was justified as incident to arrest where we have not been provided with any reliable indication of the size of the hotel room or the distances between the appellant, the closets, the bed, and his various pieces of luggage at the time of his arrest. *Cf. United States v. Palumbo,* 735 F.2d 1095, 1097 (8th Cir.), *cert. denied,* — U.S. —, 105 S.Ct. 332, 83 L.Ed.2d 268 (1984); *United States v. Lyons,* 706 F.2d at 329–31.

Whether consent was voluntarily given is a question of fact. *United States v. Kampbell*, 574 F.2d 962, 963 (8th Cir.1978).

■ We recognize that Rambo was possibly under the influence of a narcotic at the time of his arrest, Magistrate's Report at 5, and was highly disturbed. However, the mere fact that one has taken drugs, or is intoxicated, or mentally agitated, does not render consent involuntary. *See United States v. Gay*, 774 F.2d 368, 377 (10th Cir.1985); *United States v. Elrod*, 441 F.2d 353, 355 (5th Cir.1971). In each case, "[t]he question is one of mental awareness so that the act of consent was the consensual act of one who knew what he was doing and had a reasonable appreciation of the nature and significance of his actions." *Elrod*, 441 F.2d at 355.

■ The magistrate found that Rambo was not cowed by authority, and answered questions intelligently. After the officers advised Rambo of his *Miranda* rights, he responded that he would answer only certain questions. He responded coherently and rationally to the officers' requests for identification, and voluntarily directed them to his luggage. When Officer Tucker was unable to find any identification in Rambo's garment bag, Rambo directed him to his other luggage, and informed the officers where he kept the key to the padlocks on the various compartments. Rambo told the officers, when they first discovered the cocaine in his luggage, that it was for his personal use only, indicating an appreciation and comprehension of his circumstances. The officer's search was brief and its scope was consistent with the desire to secure identification; there is no evidence that the officers tried to coerce Rambo's consent to the search of his belongings. While it is clear that Rambo was in need of assistance and, indeed, needed to be subdued physically, we believe there is substantial evidence that Rambo was competent to understand the nature of his acts, and his consent was fully and voluntarily given.

We affirm the judgment of the district court.